529 S.E.2d 68

**Marguerite MILETIC, Appellant,**

v.

**WAL–MART STORES, INC., Respondent.**

**No. 3132.**

Court of Appeals of South Carolina.

Heard Feb. 10, 2000.
Decided March 13, 2000.

---

William M. Bowen, of Hilton Head Island, for appellant.

J.R. Murphy, of Murphy and Grantland, of Columbia, for respondent.

HEARN, Chief Judge:

Marguerite Miletic appeals from the trial judge's order granting summary judgment to Wal–Mart. She argues there was a genuine issue of material fact whether Wal–Mart owed her a duty as its customer to protect her from the criminal acts of third persons committed in a parking lot adjacent to Wal–Mart's premises. We affirm.

## FACTS AND PROCEDURAL HISTORY

On September 2, 1993, at approximately 12:30 a.m., Miletic stopped at the Wal–Mart located in the Port Royal Plaza shopping center on Hilton Head Island. When she parked and entered the store there was only one other car in the parking lot. Miletic was inside approximately five minutes. When she exited the store, the other car had departed, but a red car was now parked in the vicinity of Miletic's car. When Miletic entered her car, two men exited the red car, ran toward Miletic, put a gun to her head, ordered her into the back seat of her car, and drove away in her car with her. Approximately 30 minutes later, the men put Miletic out of her car on the side of the road after taking her money and credit cards. They then drove away in her car.

Miletic sued Wal–Mart, alleging that it had a duty to her as its customer to protect her from the criminal acts of third persons committed in the store's parking lot. In opposition to Wal–Mart's motion for summary judgment, Miletic submitted incident reports detailing criminal activity in or near the shopping center's parking lot in the two years preceding Miletic's abduction. Further, Miletic submitted an affidavit from Elbert Jackson, a security consultant, who stated that his security company had recommended in 1996 that Wal–Mart employ security in its parking areas because of subdued lighting.[1] At the least, Jackson recommended an unarmed bicycle patrol in the parking lot. The trial judge granted summary judgment to Wal–Mart. Miletic's appeal followed.

## ANALYSIS

■ Summary judgment is appropriate when it is clear that there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. *City of Columbia v. A.C.L.U.*, 323 S.C. 384, 386, 475 S.E.2d 747, 748

---

1. Hilton Head Island is home to a wide variety of nocturnal wildlife. In order to disturb the nocturnal habits of these animals as little as possible, there are strict controls on the amount and type of lighting that can be used after dark in areas like this parking lot. Wal–Mart was in compliance with the lighting code at the time of Miletic's abduction. Apparently, though, the subdued lighting was one reason why Jackson recommended that Wal–Mart employ armed parking lot security guards from 11 p.m. until 7 a.m.

(1996). In ruling on a motion for summary judgment, the evidence and the inferences that can be drawn therefrom should be viewed in the light most favorable to the nonmoving party. *Café Assocs. v. Gerngross*, 305 S.C. 6, 9, 406 S.E.2d 162, 164 (1991).

■ "Under South Carolina law, a merchant or restaurant owner is not charged with the duty of protecting its customer against criminal acts of third parties when it did not know or have reason to know that such acts were occurring or about to occur." *Callen v. Cale Yarborough Enterprises*, 314 S.C. 204, 206, 442 S.E.2d 216, 218 (Ct.App.1994) (declining to hold Hardee's liable for the crimes of third persons despite knowledge that numerous other violent incidents had occurred in prior years; no incidents that evening put Hardee's on notice of unrest or potential for violence, and Hardee's is not the type of operation that attracted or provided a climate for crime); *see also Munn v. Hardee's Food Sys., Inc.*, 274 S.C. 529, 531, 266 S.E.2d 414, 415 (1980) (holding that despite an incident earlier that night involving a group of people making derogatory comments of a racial nature, there was no reason for Hardee's to expect a violent fight would break out); *Shipes v. Piggly Wiggly St. Andrews, Inc.*, 269 S.C. 479, 484, 238 S.E.2d 167, 169 (1977) ("There is no duty . . . upon merchants and shopkeepers generally, whose mode of operation of their premises does not attract or provide a climate for crime, to guard against the criminal acts of a third party, unless they know or have reason to know that acts are occurring or about to occur on the premises that pose imminent probability of harm to an invitee. . . .") (quoting *Cornpropst v. Sloan*, 528 S.W.2d 188 (Tenn.1975)).

It is not the province of this Court to adopt an approach different from that espoused by our Supreme Court. However, we note the law has evolved in other jurisdictions since the Supreme Court articulated the scope of the duty of merchants under such circumstances in *Shipes*. The *Shipes* court relied on *Cornpropst v. Sloan*, 528 S.W.2d 188 (Tenn.1975), which established the rule in Tennessee that businesses which do not attract or provide a favorable climate for crime have no duty to protect their customers unless the business knows or has reason to know that criminal acts are occurring or about to occur on the premises which pose an imminent probability of

harm to a customer. Thus, the question becomes whether a criminal act is foreseeable.

To determine whether an act is foreseeable, courts generally use one of four basic approaches. *See Posecai v. Wal–Mart*, 752 So.2d 762 (La.1999). The first is known as the specific harm approach. *Id.* at 765. In order to establish a duty under this approach, a plaintiff must demonstrate a landowner or merchant is aware of the specific imminent harm about to befall him or her. *Id.* This view is considered outdated and too restrictive. *Id.* (citing *Delta Tau Delta v. Johnson*, 712 N.E.2d 968, 971 (Ind.1999)). This is the view endorsed by *Cornpropst* and thus, by South Carolina case law. The Tennessee Supreme Court overruled *Cornpropst* in 1996. *See McClung v. Delta Square Ltd. Partnership*, 937 S.W.2d 891 (Tenn.1996).

The second, more recent approach is the "prior incidents" rule. Under this view a plaintiff may establish foreseeability by evidence of previous crimes on or near the premises in question. *Posecai*, at 765 (citations omitted). The court then evaluates the "nature and extent of the previous crimes, as well as their recency, frequency, and similarity to the crime in question." *Id.* As with the imminent harm approach, a rigid interpretation of the prior incidents rule has been criticized as producing undesirable results and inconsistencies.[2] *McClung*, at 899–900.

---

2. The Tennessee Supreme Court noted in *McClung*, 937 S.W.2d at 899–900 (quoting *Isaacs v. Huntington Memorial Hosp.*, 38 Cal.3d 112, 211 Cal.Rptr. 356, 695 P.2d 653, 658–59 (1985) (citations omitted)):

 First, the rule leads to results which are contrary to public policy. The rule has the effect of discouraging landowners from taking adequate measures to protect premises which they know are dangerous. This result contravenes the policy of preventing future harm. Moreover, under the rule, the first victim always loses, while subsequent victims are permitted recovery. Such a result is not only unfair, but it is inimical to the important policy of compensating injured parties. Surely, a landowner should not get one free assault before he can be held liable for criminal acts which occur on his property.

 Second, a rule which limits evidence of foreseeability to prior similar criminal acts leads to arbitrary results and distinctions. Under this rule, there is uncertainty as to how "similar" the prior incidents must be to satisfy the rule. The rule raises a number of other troubling questions. For example, how close in time do the prior incidents

The third of the four general approaches to foreseeability is the totality of the circumstances view. *Posecai*, at 766. It is the most common approach. *Id.* This view "often focuses on the level of crime in the surrounding area and courts that apply this test are more willing to see property crimes or minor offenses as precursors to more violent crimes." *Id.* (citing *Clohesy v. Food Circus Supermkts.*, 149 N.J. 496, 694 A.2d 1017, 1028 (1997)).

Tennessee has now adopted the fourth approach, known as the balancing test. This test weighs the foreseeability of the harm against the burden imposed on a business by protecting against that harm.[3] *See McClung.* Two other states share this new approach: California and Louisiana. *See Posecai*, at 766. Regardless of the approaches to foreseeability used elsewhere, it is clear that under South Carolina law, the trial judge properly granted summary judgment in this case.

Wal–Mart is not the type of operation that attracts or provides a climate for crime. In the two years prior to Miletic's abduction, the only crime involving Wal–Mart was a larceny, not an assault, car jacking, or kidnaping. Further, Miletic testified that the attack occurred so quickly that even she had no warning the men were about to attack her.

As for Jackson's affidavit, we note that Miletic's assault and abduction occurred in 1993, and Wal–Mart consulted with Jackson in 1996 and 1997. Miletic testified that attacks on other Port Royal Plaza patrons occurred after hers. However, this is insufficient to show that Wal–Mart had the requisite knowledge to foresee the attack on Miletic in 1993.

---

have to be? How near in location must they be? The rule invites different courts to enunciate different standards of foreseeability based on their resolution of these questions.

Third, the rule erroneously equates foreseeability of a particular act with previous occurrences of similar acts... "[T]he fortuitous absence of prior injury does not justify relieving defendant from responsibility for the foreseeable consequences of its acts."

Finally, the "prior similar incidents rule" improperly removes too many cases from the jury's consideration. It is well established that foreseeability is ordinarily a question of fact.

**3.** Interestingly, *Cornpropst* itself relied on *Goldberg v. Housing Auth. of Newark*, 38 N.J. 578, 186 A.2d 291 (1962). *Goldberg's* view was abandoned by New Jersey in *Butler v. Acme Markets, Inc.*, 89 N.J. 270, 445 A.2d 1141 (1982). *See McClung*, at n. 5.

Viewing the facts in the light most favorable to Miletic, we do not think Wal–Mart had a duty under South Carolina law to protect her from an attack like the one she suffered. The store simply had no notice of any comparable violent crimes occurring in the two years prior, and no incidents occurred on that particular night to put Wal–Mart on notice of an impending violent car jacking. Because Wal–Mart had no duty to protect Miletic, it could not have negligently breached that duty.[4]

Accordingly, the trial judge's order granting summary judgment is

**AFFIRMED.**

STILWELL, J., and MOREHEAD, Acting J., concurring.

---

4. We note that Wal–Mart also argues on appeal that it did not own the parking lot, but was merely a lessee of the store's premises. Thus, it alleges that any duty to protect Miletic would fall upon the shopping center's owners rather than Wal–Mart. The trial judge did not rule on this issue, and thus we decline to address it on appeal. *Strother v. Lexington County Recreation Comm'n*, 332 S.C. 54, 504 S.E.2d 117 (1998).