680 S.E.2d 917

**Gerald BASS, Appellant,**

v.

**GOPAL, INC. and Super 8 Motels, Inc., Respondents.**

**No. 4576.**

Court of Appeals of South Carolina.

Heard April 21, 2009.

Decided July 1, 2009.

Rehearing Denied Aug. 25, 2009.

Glenn Walters and R. Bentz Kirby, of Orangeburg, for Appellant.

Andrew F. Lindemann, of Columbia, for Respondents Gopal, Inc. and Super 8 Motels, Inc.; Edward R. Spalty and Darren K. Sharp, of Kansas City, Missouri, for Respondent Super 8 Motels, Inc.

GEATHERS, J.:

Appellant Gerald Bass brought this negligence action against Respondents Gopal, Inc. (Gopal) and Super 8 Motels, Inc. (SMI). The circuit court issued an order granting summary judgment to Gopal and SMI, and Bass seeks review of that order. We affirm.

## FACTS/PROCEDURAL HISTORY

In summer 1999, Bass and several co-workers began staying at a Super 8 motel in Orangeburg while they were in the area

performing refrigeration work at a local Bi–Lo grocery store. Almost three months after Bass began staying at the motel, a stranger showed up at Bass' room on the night of September 28, 1999, and knocked on the door at approximately 10:00 p.m. Neither Bass nor his roommate, Wayne Kinlaw, answered the door. A few minutes later, there was a second knock. Bass and Kinlaw looked through the window beside the door. They saw a man whom Bass recognized as the man who stood near him at a convenience store earlier in the evening. They asked him what he wanted, and he began mumbling something unintelligible. Bass and Kinlaw did not open the door. Approximately ten to fifteen minutes later, there was a third knock. Kinlaw then opened the door, and both Kinlaw and Bass stepped outside. Kinlaw went back into the room while Bass stayed outside and asked the stranger to stop knocking on their door. The stranger demanded money from Bass; however, Bass refused. The stranger then shot Bass in his leg with a small-caliber weapon.

Bass filed this negligence action against Gopal, the motel's owner, and SMI, the franchisor. In his complaint, Bass asserted that Gopal and SMI were negligent in failing to provide adequate security at the motel. Both Gopal and SMI filed motions for summary judgment.

In opposition to the summary judgment motions, Bass submitted the affidavit of his expert witness, Harold Gillens. Gillens, who was in the business of examining buildings to assess security needs, stated that the motel where Bass was shot was located in a "high crime" area and the motel's security was inadequate. However, the statistics on which Gillens relied related to the time period between the years 2000 and 2004, which post-dated Bass' injury at the motel.

Gillens also stated in his affidavit he obtained a CRIME-CAST Site Report, which measures the risk of criminal activity at a particular site and rates the site in comparison to a national average, a state average, and a county average for various categories of crimes. This report is attached to Gillens' preliminary report. Gillens noted that the CRIME-CAST report shows the site of the motel had a predicted crime risk of 3.69 times the national average for the year 1999. However, the predicted crime risk represents the overall risk

of crime; there are other indicators for the risk of crimes against persons (versus crimes against property) and for the risk of specific crimes, for example, robbery. Notably, the motel site rates below the county average for aggravated assault and for all crimes against persons for 1999.

In support of their summary judgment motions, Gopal and SMI presented testimony from the depositions of Bass, Gillens, and Gopal's principal, Hitesh Patel. Patel testified that Gopal had owned the motel since January 1998 and he was not aware of any criminal activity at the motel prior to the night Bass was shot. He also testified that he was not aware of any criminal complaints filed by anyone in the general area. Additionally, Bass testified that he had been staying at the motel for a few months prior to the shooting and he had not noticed any criminal activity at the motel during this time period.

Gillens admitted that if no significant criminal activity had occurred at the motel for a period of time prior to Bass' shooting, then the motel's management would have no reason to expect the shooting to occur or to spend money to enhance security. Gillens also admitted that (1) the motel's perimeter lighting was appropriate; (2) the motel's room doors were appropriate and met statutory requirements;[1] (3) Bass would have stayed safe in his motel room; (4) he should have stayed in his motel room; and (5) he should have telephoned for assistance.

On the day of the motions hearing, SMI filed an affidavit of its Senior Director of Franchise Administration setting forth SMI's lack of involvement in the day-to-day operations of Gopal's motel.[2] Bass submitted a motion to strike the affidavit on the ground it was not timely filed or served. The circuit court denied the motion to strike and granted the motions for summary judgment. The circuit court concluded that neither Gopal nor SMI had a duty to protect Bass because they did not know or have reason to know the shooting would occur. The circuit court also concluded that Bass' negligence exceed-

---

1. *See* S.C.Code Ann. § 45–1–90(A) (Supp.2008) (requiring rooms to be equipped with a lock system and a viewing device such as a peephole or side window).

2. SMI served the affidavit on counsel for Bass a few days before the motions hearing.

ed any negligence on the part of Gopal or SMI. Additionally, the circuit court found there was no evidence SMI owned or operated the motel and therefore SMI could not be held legally responsible for the motel's operation on the date of the shooting.

Bass later filed a motion to alter or amend the judgment pursuant to Rule 59, SCRCP, on the ground he had newly-obtained evidence of local crime statistics for a time period preceding the date of the shooting. Attached to the motion was the affidavit of Bass' new expert witness, Danny McDaniel. McDaniel, a private investigator, stated he attempted to obtain crime statistics for the City of Orangeburg for the two years prior to the date of Bass' injury. He further stated that the City had lost their records for crime statistics prior to the year 2000 due to a change in software vendors. McDaniel obtained from the South Carolina Law Enforcement Division crime statistics for Orangeburg County for the two years prior to the shooting, but he was unable to present statistics for the specific area where the motel was located. The circuit court denied Bass' Rule 59 motion. This appeal followed.

## ISSUES ON APPEAL

1.  Did the circuit court err in ruling that Gopal and SMI owed no duty of care to Bass?

2.  Did the circuit court err in concluding as a matter of law that Bass' negligence exceeded any negligence on the part of Gopal or SMI?

3.  Did the circuit court err in finding that there was no evidence that SMI owned or operated the motel in question?

## STANDARD OF REVIEW

On appeal from the grant of a summary judgment motion, this Court applies the same standard as that required for the circuit court under Rule 56(c), SCRCP. *Brockbank v. Best Capital Corp.,* 341 S.C. 372, 379, 534 S.E.2d 688, 692 (2000). Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), SCRCP; *Adamson v. Richland County Sch. Dist. One,* 332 S.C. 121, 124, 503

S.E.2d 752, 753 (Ct.App.1998). To determine if any genuine issues of fact exist, the evidence and all reasonable inferences must be viewed in the light most favorable to the non-moving party. *Sauner v. Pub. Serv. Auth. of S.C.*, 354 S.C. 397, 404, 581 S.E.2d 161, 165 (2003).

## LAW/ANALYSIS

### I. Duty of care

Bass argues that the circuit court erred in concluding Gopal and SMI owed no duty to protect Bass once he left his motel room to confront the assailant. We disagree.

██ An innkeeper's acts or omissions may be negligent if the innkeeper realized or should have realized its conduct involved unreasonable risks of harm through the conduct of a third person, even though such conduct of the third person is criminal. *Daniel v. Days Inn of Am., Inc.*, 292 S.C. 291, 296, 356 S.E.2d 129, 132 (Ct.App.1987) (citing *Courtney v. Remler*, 566 F.Supp. 1225, 1232 (D.S.C.1983)). "[A]n innkeeper is under a duty to its guests to take reasonable action to protect them against unreasonable risk of physical harm." *Allen v. Greenville Hotel Partners, Inc.*, 405 F.Supp.2d 653, 659 (D.S.C.2005) (quoting *Courtney*, 566 F.Supp. at 1231).

█ While an innkeeper is not the insurer of safety for his guests, he owes to his guests the duty of exercising reasonable care to maintain in a reasonably safe condition those parts of his premises which a guest may be expected to use. *Courtney*, 566 F.Supp. at 1233 (applying South Carolina law). In the final analysis, the issue is whether, under all the circumstances, the innkeeper provided for its guests reasonable protection against injuries from criminal acts. *Id.*

The analysis in the *Courtney* opinion is instructive. In this case, the United States District Court for the District of South Carolina applied South Carolina law to a negligence claim against an innkeeper and analyzed the amount of protection an innkeeper must afford its guests in the context of the amount and types of criminal activity that had previously occurred on the premises. The court noted that although criminal activity on the defendant's premises was foreseeable, only minor vandalism had occurred in the past, and there had

been no criminal acts committed against a person. The court stated "[t]his fact is important when considering the amount of protection the [innkeeper] must afford its guests." *Id.*

Bass contends that the circuit court should not have relied on the analysis in *Miletic v. Wal–Mart Stores, Inc.*, 339 S.C. 327, 529 S.E.2d 68 (Ct.App.2000) in concluding that Gopal and SMI owed no duty to protect Bass once he left his motel room. In *Miletic*, this Court held that a merchant is not charged with the duty of protecting its customer against criminal acts of third parties when it did not know or have reason to know such acts were occurring or about to occur. *Id.* at 330, 529 S.E.2d at 69. Bass argues a different analysis applies to innkeepers.

■ While Bass correctly notes the distinction between innkeepers and merchants in general, the answer to whether a defendant has breached any duty remains the same under either analysis. Therefore, the circuit court's reliance on *Miletic* was harmless.[3] Both analyses depend on the defendants' knowledge of past or impending crimes on the premises; the innkeeper analysis uses this factor to determine the appropriate standard of care; and the merchant analysis uses this factor to determine whether there exists any duty of care in the first instance.[4]

---

3. *See Jensen v. Conrad*, 292 S.C. 169, 172, 355 S.E.2d 291, 293 (Ct.App. 1987) (holding that a judgment will not be reversed for insubstantial errors not affecting the result).

4. South Carolina case law imposes a duty on innkeepers to provide to its guests reasonable protection against injuries from criminal acts, and the actual amount of protection required depends on amount and types of criminal activity that have previously occurred on the premises. *See Daniel*, 292 S.C. at 296, 356 S.E.2d at 132 (holding that an innkeeper's acts or omissions may be negligent if the innkeeper realized or should have realized that its conduct involved unreasonable risks of harm through the conduct of a third person, even though such conduct of the third person was criminal); *Courtney*, 566 F.Supp. at 1233 (applying South Carolina law and analyzing the amount of protection an innkeeper must afford its guests in the context of the amount and types of criminal activity that had previously occurred on the premises). As to merchants in general, the duty to protect customers against criminal acts of third parties is qualified by actual or constructive knowledge that a crime is occurring or is about to occur. *See Miletic*, 339 S.C. at 330, 529 S.E.2d at 69.

■ Here, under either analysis, Gopal and SMI did not breach a duty of care to Bass. Bass failed to present any probative evidence of prior criminal activity at the motel or the surrounding area.[5] Further, although Gillens stated that a security survey and a crime analysis should have been conducted to determine the vulnerability of the premises, there is no South Carolina law that imposes such a duty on business owners. Gillens admitted such an analysis is not routinely performed by hotels and motels. Therefore, we conclude that Patel should not have been expected to know about the contents of the CRIMECAST report.

Moreover, Gillens admitted that if no significant criminal activity had occurred at the motel for a period of time prior to Bass' shooting, then the motel's management would have no reason to expect the shooting to occur or to spend money to enhance security. Gillens also admitted Bass would have stayed safe in his motel room.

Based on the foregoing, there was no **genuine** issue of material fact preventing summary judgment. All of the evidence with any probative value indicates that the security measures that Gopal already had in place were adequate.[6]

---

5. Bass also asserts the circuit court erred in denying his motion to alter or amend because his inability to obtain from the City of Orangeburg crime statistics pre-dating his injury injects into his case a novel issue precluding summary judgment. However, even if the Court considers the new evidence presented in Bass' motion to alter or amend (the affidavit of Bass' second expert witness), that new evidence is not probative of the crime history of the specific location of the motel. The affidavit presents county statistics that do not raise a fact issue with respect to the specific location of the motel, especially when considered in light of Hitesh Patel's testimony that he was not aware of any criminal activity at the motel prior to the night that Bass was shot.

6. In *Hancock v. Mid–South Mgmt., Inc.*, 381 S.C. 326, 330, 673 S.E.2d 801, 803 (2009), our Supreme Court stated that in cases applying the preponderance of the evidence burden of proof, the non-moving party is only required to submit a mere scintilla of evidence in order to withstand a motion for summary judgment. However, in footnote 3 of the opinion, the Court was careful to point out that its pronouncement concerning a mere scintilla of evidence was not necessary for its determination of the outcome in the *Hancock* case. In any event, we must assume any evidence, even a scintilla, that is useful to withstand a summary judgment motion must meet the prerequisite of being probative. *See McDowell v. Stilley Plywood Co.*, 210 S.C. 173, 179, 41 S.E.2d 872, 874–75 (1947) (holding that although there was a scintilla of

Bass' own expert witness admitted that the motel's perimeter lighting was appropriate; the motel's room doors were appropriate and met statutory requirements; and Bass would have stayed safe in his motel room. Under all the circumstances, Gopal provided reasonable protection for its guests against injuries from criminal acts.

## II. Comparative Negligence

■ Bass asserts that the circuit court erred in concluding, as a matter of law, that Bass' negligence exceeded any negligence on the part of Gopal or SMI. We disagree.

■ If the sole reasonable inference that may be drawn from the evidence is that the plaintiff's negligence exceeded fifty percent, the circuit court may determine judgment as a matter of law in favor of the defendant. *Bloom v. Ravoira*, 339 S.C. 417, 422, 529 S.E.2d 710, 713 (2000).

Here, Bass' own expert witness admitted that Bass would have stayed safe in his room and he should have stayed in his room and telephoned for assistance. Bass' expert also admitted the motel's lighting and room doors were appropriate and the doors met statutory requirements. In contrast, there was no probative evidence Gopal or SMI breached any duty of care to Bass. Based on the foregoing, the only reasonable inference that may be drawn from the evidence is that Bass' negligence in stepping outside of his room and confronting the assailant exceeded any possible innkeeper negligence. Therefore, Bass' comparative negligence was a proper ground on which to grant summary judgment to Gopal and SMI.

## III. SMI's Liability

■ Bass contends that the circuit court erred in ruling that there was no evidence that SMI operated the motel. We disagree.

---

testimony that could be used to support the claimants' position, when the entire testimony of the witnesses was viewed as a whole, it was obvious the testimony in support of claimants' position rested on speculation and thus had no probative value). In the instant case, we cannot find even a scintilla of probative evidence to withstand Gopal's and SMI's summary judgment motions.

For the Court to find that SMI operated the motel, there must be evidence it asserted sufficient control over the motel's daily operations. *Cf. Allen v. Greenville Hotel Partners, Inc.,* 409 F.Supp.2d 672, 679 (D.S.C.2006) (stating that in determining whether a franchisee could be an agent of the franchisor for the purpose of a negligence action arising from a hotel fire, the court must consider whether the franchisor exerted sufficient control over the daily operations or hotel security).

Bass argues that the following evidence shows that SMI operated the motel: (1) SMI inspects the motel every three months to determine how the property is run; (2) during the inspection, SMI checks the components of nine rooms, including the bed, television, lock systems, peep holes, and tubs; (3) SMI provides a checklist of changes to be made; and (4) SMI requires owners to attend training. However, these facts do not establish SMI asserted sufficient control over the motel's daily operations for a reasonable fact finder to say SMI operated the motel. *Cf. Allen,* 409 F.Supp.2d at 677 (stating that the clear trend in the case law in other jurisdictions is that the quality standards, operational standards, and inspection rights contained in a franchise agreement do not establish a franchisor's control or right of control over the franchisee sufficient to ground a claim for vicarious liability as a general matter).

A comparison of the relationship between SMI and Gopal to the franchise relationship in *Allen* is instructive. In *Allen,* the franchise agreement and the franchisor's Rules and Regulations set forth that the franchisees (1) owned the building, land, and hotel equipment; (2) held the operating licenses and permits; (3) hired, fired, supervised, and disciplined the franchisee's employees; (4) determined employee wages and room rates; (5) provided daily training for employees; and (6) provided insurance for the hotel. *Allen,* 409 F.Supp.2d at 677. The franchisor's Rules and Regulations required the franchisees to have life safety systems and an emergency evacuation plan. *Id.* The Rules and Regulations also recommended an emergency power generator and sprinkler system. *Id.*

The court in *Allen* noted that neither the franchise agreement nor the franchisor's Rules and Regulations established the franchisor operated the hotel or controlled its life safety

systems. The court found that the **franchisees** operated the hotel **under** the franchisor's Rules and Regulations. *Id.* (emphasis added). The court also found the franchisor did not control the hotel's daily operations or hotel security and life safety systems and through the franchise agreement and the Rules and Regulations, the franchisor merely maintained uniform service and public good will. *Allen,* 409 F.Supp.2d at 679. The court thus concluded the franchisor could not be liable on an agency theory. *Id.*

Here, according to the testimony of Hitesh Patel, Gopal entered into a franchise agreement with SMI, and the agreement required Gopal to (1) handle the daily management of the motel's operations; (2) obtain liability insurance; (3) allow the franchisor to inspect the premises every three months; (4) attend a training seminar; and (5) pay to the franchisor eight percent of the profits from the motel's operation. Bass presented no probative evidence showing SMI controlled the motel's daily operations or its security. Rather, the evidence shows SMI set in place certain standards for Gopal to follow to protect SMI's good will and that Gopal controlled the daily operation of the motel to implement SMI's standards.

Bass also argues that the circuit court should have stricken the affidavit of SMI's Senior Director of Franchise Administration due to its late service and filing. The affidavit set forth SMI's lack of involvement in the day-to-day operations of Gopal's motel. Assuming, arguendo, that the circuit court should not have considered the affidavit,[7] any such error does not affect the result of this case and therefore is not reversible. *See Jensen v. Conrad,* 292 S.C. 169, 172, 355 S.E.2d 291, 293 (Ct.App.1987) (holding that a judgment will not be reversed for insubstantial errors not affecting the result). Patel testified that he handled the motel's daily operations, and Bass presented no probative evidence in oppo-

---

7. Bass' counsel does not cite any authority in his brief to support the argument that the affidavit should have been stricken. Therefore, he has actually abandoned this argument. *See* Rule 208(b)(1)(D), SCACR (requiring the citation of authority in the argument portion of an appellant's brief); *Hunt v. Forestry Comm'n,* 358 S.C. 564, 573, 595 S.E.2d 846, 851 (Ct.App.2004) (holding that issues raised in a brief but not supported by authority are deemed abandoned and will not be considered on appeal).

sition. Therefore, there was no genuine fact issue as to the operation of the motel that would prevent summary judgment in SMI's favor. *See Strickland v. Madden,* 323 S.C. 63, 68, 448 S.E.2d 581, 584 (Ct.App.1994) (holding that an adverse party may not rely on the mere allegations in his pleadings to withstand a summary judgment motion, but must set forth specific facts showing there is a genuine issue for trial).

## CONCLUSION

Accordingly, the circuit court's order granting summary judgment to Gopal and SMI is

**AFFIRMED.**

SHORT and THOMAS, JJ., concur.