716 S.E.2d 910

Gerald BASS, Petitioner,

v.

GOPAL, INC. and Super 8 Motels, Inc., Defendants,

of whom Gopal, Inc. is, Respondent.

No. 27054.

Supreme Court of South Carolina.

Heard May 4, 2011.
Decided Oct. 10, 2011.

130

R. Bentz Kirby and Glenn Walters Sr., of Orangeburg, for Petitioner.

Andrew F. Lindemann, of Davidson & Lindemann, of Columbia, for Respondent.

Deborah J. La Fetra, of Sacramento, and Reynolds Williams, of Willcox, Buyck & Williams, of Florence, for Amicus Curiae Pacific Legal Foundation.

Chief Justice TOAL.

In this premises liability action, we are reviewing the court of appeals' decision upholding the circuit court's grant of summary judgment in favor of a motel and its franchisee when a guest was shot in the leg during an attempted robbery outside of his motel door. We affirm.

### FACTS/PROCEDURAL BACKGROUND

The facts of this case are undisputed. From approximately June 1999 until the end of September 1999, Petitioner Gerald Bass was a guest at the Super 8 Motel (Super 8) in Orangeburg, South Carolina, while he and several co-workers performed refrigeration work at a local grocery store. Gopal, Incorporated (Respondent), a franchisee of Super 8, owned and operated the motel.

The Super 8 is an exterior corridor-style motel. At approximately 10:00 p.m. on the evening of September 28, 1999, Petitioner and his roommate, Wayne Kinlaw, were turning in for the evening when they received a knock at their door. The door was equipped with a peep hole, and there was a large plate glass window beside the door. Looking out the window, Kinlaw did not see anyone at the door and did not open the door. After several minutes, they heard a second

knock. This time, Kinlaw and Petitioner noticed a man standing at the door—the same man Petitioner had seen earlier that evening at a convenience store across the street from the motel. Kinlaw asked the man what he wanted through the closed door. They only heard mumbling in response and did not open the door. Approximately fifteen minutes later, they received a third knock at the door. Both men got out of bed, and without looking first to see who was at the door, Kinlaw opened the door. They saw the same man standing a couple of feet from the door and both Kinlaw and Petitioner stepped outside. The man then asked Petitioner for his money, in unsavory terms. When Petitioner refused, the man shot Petitioner in the leg with a small caliber handgun and fled on foot.

In September 2002, Petitioner filed a complaint alleging negligence against both Respondent and Super 8.[1] Respondent and Super 8 each filed motions for summary judgment, which were granted. The court of appeals affirmed. *Bass v. Gopal, Inc. and Super 8 Motels, Inc.*, 384 S.C. 238, 680 S.E.2d 917 (Ct.App.2009). This case is now before the Court upon grant of Petitioner's petition for writ of certiorari, pursuant to Rule 242(a), SCACR.

## ISSUE

I. Whether the court of appeals erred in upholding the circuit court's finding that Respondent did not have a duty to protect Petitioner from the criminal act of a third party.

### STANDARD OF REVIEW

An appellate court reviews a grant of summary judgment under the same standard required of the circuit court under Rule 56(c), SCRCP. *Edwards v. Lexington County Sheriff's Dep't*, 386 S.C. 285, 290, 688 S.E.2d 125, 128 (2010). Rule 56(c), SCRCP, provides that summary judgment may be granted if a review of all documents submitted to the court shows there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. In determining whether a genuine issue of material fact

---

1. The appeal against Super 8 has been dismissed. In describing the procedural history preceding this appeal, we refer to Super 8 and Gopal collectively as Defendants.

exists, the court must view the evidence and all reasonable inferences that may be drawn from the evidence in the light most favorable to the non-moving party. *Gignilliat v. Gignilliat, Savitz & Bettis, L.L.P.*, 385 S.C. 452, 456, 684 S.E.2d 756, 758 (2009). In a negligence case, where the burden of proof is a preponderance of the evidence standard, the non-moving party must only submit a mere scintilla of evidence to withstand a motion for summary judgment. *Hancock v. Mid–South Mgmt. Co., Inc.*, 381 S.C. 326, 330, 673 S.E.2d 801, 803 (2009).

## ANALYSIS

Petitioner argues the court of appeals placed too much emphasis on the lack of evidence of other crimes committed at the motel prior to the assault on Petitioner when it upheld the circuit court's grant of summary judgment. Petitioner contends the court of appeals should have instead considered the evidence submitted as a whole, arguing the evidence, viewed in its entirety, raised a genuine issue of material fact as to whether Respondent had a duty of care with respect to Petitioner. In our opinion, Petitioner's submissions to the circuit court provided at least a scintilla of evidence that the criminal assault on Petitioner was foreseeable. However, Petitioner offered no evidence that Respondent's preventative measures were unreasonable under the circumstances. Therefore, we uphold the circuit court's grant of summary judgment.

In any negligence action, the threshold issue is whether the defendant owed a duty to the plaintiff. *See Daniel v. Days Inn of America, Inc.*, 292 S.C. 291, 295, 356 S.E.2d 129, 131 (Ct.App.1987) (stating the familiar components of a negligence action—duty, breach, causation, and damages). In South Carolina, while an innkeeper is not the insurer of safety of its guests, it is settled that an innkeeper "is under a duty to its guests to take reasonable action to protect them against unreasonable risk of physical harm." *Allen v. Greenville Hotel Partners, Inc.*, 405 F.Supp.2d 653, 659 (D.S.C.2005) (*quoting Courtney v. Remler*, 566 F.Supp. 1225, 1231 (D.S.C. 1983)). As a guest at the motel, Respondent undoubtedly had a duty to protect Petitioner on some level. The extent of that duty may be determined with an analysis of whether the

innkeeper knew or had reason to know of a probability of harm to its guests. *Daniel,* 292 S.C. at 296, 356 S.E.2d at 132 (*citing Courtney,* 566 F.Supp. at 1232). Perhaps a clearer description of a business owner's duty, then, is that a business owner has a duty to take reasonable action to protect its invitees against the *foreseeable* risk of physical harm.

Four basic approaches to the foreseeability issue have emerged amongst jurisdictions nationally. *Miletic v. Wal–Mart Stores, Inc.,* 339 S.C. 327, 331, 529 S.E.2d 68, 69 (Ct.App. 2000) (*citing Posecai v. Wal–Mart Stores, Inc.,* 752 So.2d 762, 766 (La.1999)). The first approach, considered to be some-what outdated, is known as the imminent harm rule. *Miletic,* 339 S.C. at 331, 529 S.E.2d at 69. Under this rule, the landowner owes no duty to protect patrons from violent acts of third parties unless he is aware of specific and imminent harm about to befall him. *Id.* at 331, 529 S.E.2d at 70. This Court adopted this rule in *Shipes v. Piggly Wiggly St. Andrews, Inc.:*

> There is no duty upon the owners or operators of a shop-ping center, individually or collectively, or upon merchants and shopkeepers generally, whose mode of operation of their premises do not attract or provide a climate for crime, to guard against the criminal acts of a third party, unless they know or have reason to know that acts *are occurring or about to occur* on the premises that *pose imminent probability of harm* to an invitee; whereupon a duty of reasonable care to protect against such act arises.

269 S.C. 479, 484, 238 S.E.2d 167, 169 (1977) (*quoting and expounding the rule in Cornpropst v. Sloan,* 528 S.W.2d 188, 198 (Tenn.1975)) (emphasis supplied). This standard has been criticized as imposing too minimal a duty on business owners to protect patrons. *Delta Tau Delta v. Johnson,* 712 N.E.2d 968, 972 (Ind.1999); *McClung v. Delta Square Ltd. P'ship,* 937 S.W.2d 891, 902 (Tenn.1996). Since adopting this standard, Tennessee has replaced its imminent harm rule with the balancing test, discussed below. *McClung,* 937 S.W.2d at 902.

■ A second approach is the prior or similar incidents test. *Miletic,* 339 S.C. at 331, 529 S.E.2d at 70 (*citing Posecai,* 752 So.2d at 765). This is the test urged by Respon-dent, and in our view, is the test applied by the circuit court and court of appeals in this case. Under this test, foreseeabil-

ity may only be established by evidence of previous crimes on or near the premises. *Id.* Courts following this test will consider the nature and extent of previous crimes, their frequency, recency, and similarity to the crime at issue. *Id.* With this approach, some courts require that prior crimes be of the same general type and nature as the offense at issue, *see, e.g., Taylor v. Hocker,* 101 Ill.App.3d 639, 57 Ill.Dec. 112, 428 N.E.2d 662, 664–65 (1981) (holding that previous crimes against property were insufficient to put the landowner on notice of personal assaults against its patrons), while others will impose a duty to protect patrons based on past crimes of any type, *see, e.g., Polomie v. Golub Corp.,* 226 A.D.2d 979, 640 N.Y.S.2d 700, 701 (1996) ("[T]here is no requirement that the past experience relied on to establish foreseeability be of the same type of criminal conduct to which plaintiff was subjected. . . ."). The prior incidents test offers the same advantages as the imminent harm test—it prevents businesses from effectively becoming the insurer of the public's safety. However, for the following reasons, we do not believe evidence of prior criminal incidents should be the *sine qua non* of determining the foreseeability required to establish a duty:

First, the rule leads to results which are contrary to public policy. . . . [U]nder the rule, the first victim always loses, while subsequent victims are permitted recovery. Such a result is not only unfair, but is inimical to the important policy of compensating injured parties. Surely, a landowner should not get one free assault before he can be held liable for criminal acts which occur on his property.

Second, a rule which limits evidence of foreseeability to prior similar criminal acts leads to arbitrary results and distinctions. Under this rule, there is uncertainty as to how "similar" the prior incidents must be to satisfy the rule. The rule raises a number of other troubling questions. For example, how close in time do the prior incidents have to be? How near in location must they be? The rule invites different courts to enunciate different standards of foreseeability based on their resolution of these questions.

Third, the rule erroneously equates foreseeability of a particular act with previous occurrences of similar acts. . . . The mere fact that a particular kind of an accident has not happened before does not . . . show that such accident is one

which might not reasonably have been anticipated. Thus, the fortuitous absence of prior injury does not justify relieving defendant from responsibility for the foreseeable consequences of its acts.

*Isaacs v. Huntington Mem'l Hosp.*, 38 Cal.3d 112, 211 Cal. Rptr. 356, 695 P.2d 653, 658–59 (1985) (internal citations and quotations omitted); *see also* Michael J. Yelnosky, Comment, *Business Inviters' Duty to Protect Invitees from Criminal Acts*, 134 U. Pa. L.Rev. 883, 905 (1986) (observing that the prior similar acts test produces "extraordinarily arbitrary results" and "denies ... compensation to the first victim").

A majority of jurisdictions have adopted the totality of the circumstances approach in an effort to prevent the "rigid application of a mechanical" prior incidents rule. *Isaacs*, 211 Cal.Rptr. 356, 695 P.2d at 659; *see also District of Columbia v. Doe*, 524 A.2d 30, 33 (D.C.1987); *Seibert v. Vic Regnier Builders, Inc.*, 253 Kan. 540, 856 P.2d 1332, 1339 (1993); *Doud v. Las Vegas Hilton Corp.*, 109 Nev. 1096, 864 P.2d 796, 802 (1993); *Clohesy v. Food Circus Supermarkets, Inc.*, 149 N.J. 496, 694 A.2d 1017, 1023–24 (1997); *Reitz v. May Co. Dept. Stores*, 66 Ohio App.3d 188, 583 N.E.2d 1071, 1074 (1990). Under this test, courts will consider all relevant factual circumstances, "including the nature, condition, and location of the land, as well as prior similar incidents, to determine whether a criminal act was foreseeable." *Delta Tau Delta v. Johnson*, 712 N.E.2d 968, 972 (Ind.1999). Therefore, "[t]he lack of prior similar incidents will not preclude a claim where the landowner knew or should have known that the criminal act was foreseeable." *Id.* at 973. This test is the broadest of the four approaches.

Because of its broad applicability, the totality of the circumstances approach has been subject to criticism. *See Ann M. v. Pacific Plaza Shopping Ctr.*, 6 Cal.4th 666, 25 Cal.Rptr.2d 137, 863 P.2d 207, 215 (1993) (noting that, at the time, it was the only jurisdiction employing the standard); *McClung*, 937 S.W.2d at 900 ("[T]he totality approach arguably requires businesses to implement expensive security measures (with costs passed on to consumers) and makes them the insurers of customer safety, two results which courts seek to avoid."); Uri Kaufman, *When Crime Pays: Business Landlord's Duty to Protect Customers from Criminal Acts Committed on the*

*Premises,* 31 S. Tex. L.Rev. 89, 112 (1990) (stating the totality approach's effect is to impose an unqualified duty on businesses in high crime areas to provide elaborate security). The Supreme Court of Tennessee expressed concern over the natural consequence of this test in *McClung v. Delta Square Limited Partnership:* "[b]usinesses may react by moving from poorer areas where crime rates are often the highest. Not surprisingly then, the totality of the circumstances test has been described as 'imprecise,' 'unfair,' and 'troublesome' because it makes liability for merchants even less predictable than under the prior incidents rule." 937 S.W.2d at 900 (citations omitted). We note that, in *McClung,* the Supreme Court of Tennessee abandoned the imminent harm test put forth in *Cornpropst v. Sloan,* the case on which this Court relied in *Shipes.* We, too, believe that a totality of the circumstances test shifts too great a burden on business owners, and effectively requires businesses to anticipate crime by virtue of the unfortunate fact that crime is endemic in today's society.

The fourth and final approach adopted by courts is the balancing test; an approach originally formulated by the California Supreme Court, *Ann M. v. Pacific Plaza Shopping Ctr.,* 6 Cal.4th 666, 25 Cal.Rptr.2d 137, 863 P.2d 207, 214–15 (1993), and that has since been adopted by the supreme courts of Tennessee, *McClung,* 937 S.W.2d at 902, and Louisiana, *Posecai,* 752 So.2d at 768. *See also Krier v. Safeway Stores 46, Inc.,* 943 P.2d 405, 415 (Wy.1997) (approving of *McClung's* balancing test but not expressly adopting). "The balancing approach acknowledges that duty is a flexible concept, and seeks to balance the degree of foreseeability of harm against the burden of the duty imposed." *McClung,* 937 S.W.2d at 901 (*citing Ann M.,* 25 Cal.Rptr.2d 137, 863 P.2d at 215). As such, the more foreseeable a crime, the more onerous is a business owner's burden of providing security. *McClung,* 937 S.W.2d at 901. Under this test, the presence or absence of prior criminal incidents is a significant factor in determining the amount of security required of a business owner, but their absence does not foreclose the duty to provide some level of security if other factors support a heightened risk. Simply put by Judge Posner of the United States Court of Appeals for the Seventh Circuit, "the hotel should increase its expendi-

tures on security until the last dollar buys a dollar in reduced expected crime costs ... to the hotel's guests." *Shadday v. Omni Hotels Mgmt. Corp.*, 477 F.3d 511, 514 (7th Cir.2007).

 At least one court has criticized the balancing test as bleeding the line between duty and breach. *See Delta Tau Delta v. Johnson*, 712 N.E.2d 968, 973 (Ind.1999) (adopting the totality of the circumstances instead of the balancing test because the reasonableness of a business owner's precautions "is basically a breach of duty evaluation and is best left for the jury to decide."). We note this concern, but believe the heavy burden imposed on businesses by the totality of the circumstances approach requires narrowing, and duty can be a flexible concept. As the foreseeability of potential harm increases, so, too, does the duty to prevent against it. Indeed, our courts have consistently imposed a duty on business owners to employ reasonable measures to protect invitees from foreseeable harm. *See Allen v. Greenville Hotel Partners, Inc.*, 405 F.Supp.2d 653, 659 (D.S.C.2005) (business owner has a "duty to its guests to take reasonable action to protect them against unreasonable risk of physical harm"). In adopting a balancing approach, we do not alter this duty, but merely elucidate how to determine (1) if a crime is foreseeable, and (2) given the foreseeability, determine the economically feasible security measures required to prevent such harm. The optimal point at which a dollar spent equals a dollar's worth of prevention will not always be apparent, but may be roughly ascertained with the aid of an expert, or some other testimony. *Shadday*, 477 F.3d at 514. As opposed to the imminent harm, prior incidents, or totality of circumstances tests, we believe the balancing approach appropriately weighs both the economic concerns of businesses, and the safety concerns of their patrons. In replacing our imminent harm test with a balancing test, we hope to "encourage[ ] a reasonable response to the crime phenomenon without making unreasonable demands." *McClung*, 937 S.W.2d at 902.

We turn now to the facts of the instant case. The circuit judge found Defendants owed no duty of care to protect Petitioner from the criminal act of a third party because Petitioner did not demonstrate Defendants knew or had any reason to know an assault against Petitioner would occur. The circuit court determined this based on Petitioner's failure

to provide the court with specific instances of criminal activity on the premises prior to the September 28, 1999 incident.

 Petitioner was unable to supply a report of criminal incidents at the Super 8 prior to the attack on Petitioner.[2] However, Petitioner produced a CRIMECAST report[3] that showed, in 1999, the risk of crimes against persons at the Super 8 was 3.5 times the national average risk, nearly twice the state average risk, but slightly less than the county risk. The risk of rape and robbery at the Super 8 was above the county average, according to the report. Petitioner also submitted a report indicating the robbery rate in Orangeburg County in 1999 exceeded the state benchmark by approximately 190 percent. Specifically, from January 1, 1999, through September 30, 1999, 160 aggravated assaults and 60 robberies occurred county-wide.

We do not believe evidence of an elevated crime rate covering the expanse of an entire county, on its own, is sufficient to prove foreseeability by a preponderance of the evidence. Such a finding would diminish a business's economic incentive to expand into higher crime counties, which arguably are in the greatest need of commercial stimulus. However, we are not prepared to say crime forecasting tools, such as the CRIMECAST report, bear no probative value. The weight given to CRIMECAST reports in determining foreseeability varies nationally. *Compare Shadday v. Omni Hotels Mgmt. Corp.*, 2006 WL 693680 (S.D.Ind.2006) (finding a CRIMECAST report showing the risk of rape as 3.5 times higher than the national average did not prove foreseeability sufficient to survive summary judgment), *and Ali v. Dao*, 2009 WL 2567995 (N.J.Super.A.D.2009) (finding high CAP index

---

**2.** The Orangeburg County Department of Public Safety only has records dating back to 2000 because of a software change in 2000 that deleted records prior to that time. Instead, Petitioner's expert supplied the circuit court with a crime incident report at the Super 8 showing three robberies, two aggravated assaults, and four simple assaults occurred on the property from 2000 to 2004.

**3.** "The CRIMECAST model produces probability measures that place any location in the United States in context with national, state and county levels of criminality." The crimes against persons (CAP) index represents the overall risk of homicide, rape, robbery, and aggravated assault.

was not sufficient evidence to prove foreseeability), *with Whitt v. Wal–Mart Stores East, L.P.*, 2010 WL 1416756 (E.D.Ky. 2010) (a low CAP index for violent crimes indicated a low risk of a violent crime in Wal–Mart parking), *and Currie v. Chevron USA, Inc.*, 2006 WL 5249707 (N.D.Ga.2006) (CRIME-CAST report was sufficient to establish lack of foreseeability). In citing these cases, we note federal courts require more from a non-moving party to survive summary judgment than do our state courts. In this case, the especial high probability of crime at the Super 8 compared to the national and state averages raised at least a scintilla of evidence that the crime against Petitioner was foreseeable. We recognize that, according to the report, the risk of an aggravated assault occurring at the Super 8 was slightly lower than the county-wide risk. However, the risk of robbery and rape at the Super 8 was above the county average, and the security measures required to curb robbery, rape, and aggravated assault are arguably similar. Based on the foregoing, we believe Petitioner produced at least some evidence the aggravated assault was foreseeable.

■ In so finding, this Court must determine whether Petitioner provided any evidence Respondent's preventative actions were unreasonable given this risk. Petitioner asserts Respondent should have either hired a security guard to patrol the premises or installed a roving camera security system. In our view, the hiring of security personnel is no small burden. Considering a business's economic interest, it is difficult to imagine an instance where a business would be required to employ costly security guards in the absence of evidence of prior crimes on the premises. However, a business, such as this one, in a high crime area without evidence of prior criminal incidents may be required to institute less costly measures to offset an elevated risk of harm, such as installing extra lighting, fences, locks, or security cameras, or simply training existing personnel on best security practices.

As part of the balancing approach we adopt, a determination of whether a business proprietor's security measures were reasonable in light of a risk will, at many times, be identified by an expert. Petitioner's expert visited the Super 8 on three occasions, both during the day and night time, to observe the neighborhood and physical layout of the motel. He deter-

mined Respondent provided adequate lighting at its facility and the physical hardware on the door was within industry standards. However, the expert concluded the addition of a closed circuit camera or some type of additional security personnel would have been reasonable in light of his perceived risk. The expert based his risk perception at the site primarily upon criminal incident data he gathered from 2000 to 2004, after the assault on Petitioner took place. Determinative of this case, in our opinion, is the expert's testimony that "if . . . this is [the] first time [a criminal incident occurred], there wasn't enough data for [Respondent] to say he really needed to spend a bunch of money on surveillance cameras, a bunch of money on a full-time security guard or part-time, or train his employees to do a guard tour. . . ." This expert's testimony was the only evidence supplied by Petitioner that spoke to the reasonableness of Respondent's precautions.[4] Even casting all evidence in a light most favorable to the Petitioner, he failed to provide any evidence that Respondent should have expended more resources to curtail the risk of criminal activity that might have been probable. Therefore, we find the court of appeals' decision upholding the circuit court's grant of summary judgment was proper.

## CONCLUSION

Today, we adopt the balancing approach to determining foreseeability in the context of whether a business owner has a duty to protect its invitees from criminal acts of third parties. We believe this test appropriately strikes a balance between the economic concerns of businesses and the safety concerns of the public. Even with all reasonable inferences from the evidence cast in favor of Petitioner, we find Petitioner did not provide the circuit court any evidence that Respondent's security measures were unreasonable given the risk of criminal activity on the property. Therefore, the circuit court's grant of summary judgment is

**AFFIRMED.**

---

4. The affidavit of another expert supplied by Petitioner merely agreed with the first expert's assessment as it related to the precautionary measures required of Respondent.

BEATTY, KITTREDGE and HEARN, JJ., concur.

PLEICONES, J., concurring in a separate opinion.

Justice PLEICONES:

I concur in the majority's decision to affirm the Court of Appeals' decision upholding the circuit court's grant of summary judgment, but would do so on the ground that petitioner's negligence in leaving the safety of his motel room exceeded respondent's negligence, if any, as a matter of law. *See Bass v. Gopal, Inc.,* 384 S.C. 238, 247, 680 S.E.2d 917, 921–922 (Ct.App.2009).

The Court of Appeals held that, under existing South Carolina law, an innkeeper owes a duty to her guests "to provide . . . reasonable protection against injuries from criminal acts, and the actual amount of protection depends on the amount and types of criminal activity that have previously occurred on the premises." *Bass,* at 245, fn. 4, 680 S.E.2d at 920, fn. 4. The court distinguished this specialized innkeeper duty from that of a merchant, whose duty to protect customers from third party criminal acts is limited to those which the merchant has actual or constructive knowledge are, or are about to, occur. *Id.* [citing *Miletic v. Wal–Mart Stores, Inc.,* 339 S.C. 327, 529 S.E.2d 68 (Ct.App.2000) ].

While I appreciate the majority's scholarly approach to the issues of duty and foreseeability, I perceive little difference between our existing law, and the test adopted by the majority, other than a requirement for expert testimony, and reliance upon city/county statistics. Like the Court of Appeals, I would hold that since there is no duty imposed upon business owners to conduct a crime analysis, there is no reason to impute knowledge of the CRIMECAST report to respondent, and further that these types of city/county statistical reports are irrelevant to determining an innkeeper's duty. I would not alter our existing law, but were I to do so, I would remand to permit the parties an opportunity to meet the newly announced test.

Because I would hold that the Court of Appeals correctly affirmed the grant of summary judgment on the comparative negligence ground, I concur in the result reached by the majority.