757 S.E.2d 695

**Ida LORD, Appellant,**

v.

**D & J ENTERPRISES, INC., d/b/a Cash on the Spot, Respondent.**

Appellate Case No. 2012–208267.

No. 27376.

Supreme Court of South Carolina.

Heard Jan. 7, 2014.

Decided April 9, 2014.

Rehearing Denied May 22, 2014.

Robert J. Reeves, of Law Offices of Robert J. Reeves, P.C., of Fort Mill, and Arthur Kerr Aiken, of Aiken & Hightower, of Columbia, for appellant.

Leland B. Greeley, of Leland B. Greeley, PA, of Rock Hill, for respondent.

Justice BEATTY.

In this premises liability case involving a third-party criminal act, Ida Lord ("Lord") appeals the circuit court's order granting summary judgment in favor of D & J Enterprises, Inc., d/b/a Cash on the Spot ("D & J"). Lord asserts the circuit court erred in: (1) finding the balancing approach adopted in *Bass v. Gopal, Inc.*, 395 S.C. 129, 716 S.E.2d 910 (2011) (*"Gopal II"*), which is used to determine a business owner's duty to protect a patron based on the foreseeability of violent acts by third parties, applied prospectively; and (2) granting summary judgment as she presented a genuine issue of material fact on each element of her negligence claim. We

548

reverse the order of the circuit court and remand for trial because we find *Gopal II* applies to the facts of the instant case and its application warranted the denial of D & J's motion for summary judgment.

## I. Factual/Procedural History

D & J is a South Carolina corporation that operates businesses involving check cashing, "pay day" lending, and motor vehicle title lending. One of its businesses is Cash on the Spot, which is located in Rock Hill, South Carolina. Cash on the Spot is outfitted with iron bars on the windows of its building and bulletproof glass on its teller's windows for the protection of its employees.

On February 14, 2008, Lord went to Cash on the Spot to retrieve money wired to her using Western Union. As she approached the teller's window, a man seated at a nearby table stood up, reached under his clothing, pulled out a pistol, and shot Lord in the head and back. The man then demanded money as he slid his weapon through the opening in the teller's window. Marsha Boyd, the manager of the store who was stationed behind the bulletproof teller's window and had access to a silent alarm, immediately called 911. The man then fled the premises.

The incident, which lasted approximately six seconds, was captured on the store's security camera. As a result of this video and DNA recovered from a pen that the man had put in his mouth, law enforcement was able to identify the suspect as Phillip Watts, Jr.

After Watts was apprehended, he confessed to committing seven armed robberies in York County. The string of robberies, which began in October 2007 and primarily targeted small businesses, was the subject of significant media coverage. Prior to the Cash on the Spot incident, Watts robbed Rock Hill's Saltwater Seafood Market on January 28, 2008, and Fort Mill's John Boy's Valero on February 5, 2008. During these robberies, Watts shot two store clerks and a bystander. Before the February 14, 2008 incident involving Lord, the owner of Cash on the Spot warned his employees to be vigilant because "there is a madman on the loose."

On May 15, 2008, a York County grand jury indicted Watts for assault and battery with intent to kill and possession of a firearm during the commission of a violent crime stemming from the shooting of Lord. Ultimately, Watts entered a plea of guilty but mentally ill to these charges and the other armed robberies and was sentenced to a term of life imprisonment without the possibility of parole.

On June 19, 2009, Lord filed an action for negligence against D & J, alleging the business breached its duty to her "to use reasonable care for her safety" because it failed to implement security features such as posting a security guard on the premises.

D & J answered and moved for summary judgment. In support of its motion, D & J filed a memorandum wherein it argued that it had no duty to protect Lord from the injuries caused by Watts. Citing *Miletic v. Wal–Mart Stores, Inc.*, 339 S.C. 327, 529 S.E.2d 68 (Ct.App.2000),[1] D & J asserted it

1. In *Miletic*, the plaintiff brought suit against Wal–Mart after she was abducted at gunpoint from the store parking lot on September 2, 1993. *Miletic*, 339 S.C. at 329, 529 S.E.2d at 68. The plaintiff alleged Wal–Mart had a duty to her as its customer to protect her from the criminal acts of third persons committed in the store's parking lot. *Id.* at 329, 529 S.E.2d at 68–69. In opposition to Wal–Mart's motion for summary judgment, the plaintiff submitted incident reports detailing criminal activity in or near the shopping center's parking lot in the two years preceding her abduction. *Id.* at 329, 529 S.E.2d at 69. The plaintiff also submitted an affidavit from a security consultant who stated that his security company had recommended in 1996 that Wal–Mart employ security, at the least an unarmed bicycle patrol, in its parking areas because of the subdued lighting required by city code. *Id.* After the trial judge granted Wal–Mart's motion, the plaintiff appealed to the Court of Appeals. *Id.*

 In affirming the grant of summary judgment, the Court of Appeals referenced this Court's decision in *Shipes v. Piggly Wiggly St. Andrews, Inc.*, 269 S.C. 479, 238 S.E.2d 167 (1977) as the established approach in determining the "scope of the duty of merchants." *Id.* at 330, 529 S.E.2d at 69. Specifically, the court stated, "There is no duty ... upon merchants and shopkeepers generally, whose mode of operation of their premises does not attract or provide a climate for crime, to guard against the criminal acts of a third party, unless they know or have reason to know that acts are occurring or about to occur on the premises that pose imminent probability of harm to an invitee." *Id.* (quoting *Shipes*, 269 S.C. at 484, 238 S.E.2d at 169). Although the court recognized that "the law ha[d] evolved in other jurisdictions since the Supreme Court articulated the scope of the duty of merchants under

was not foreseeable that Watts would shoot Lord because Watts appeared to be a regular customer and the incident lasted less than six seconds. D & J further noted there were "no prior attempted armed robberies [at Cash on the Spot], or any type of violen[t] offense[s] against either employees or patrons." Additionally, D & J claimed there was no evidence presented to establish that Cash on the Spot was located in a dangerous area or constituted a business that attracts or provides a climate for crime. Given these facts, D & J maintained that the presence of a security guard would not have deterred Watts from entering Cash on the Spot or prevented the shooting.

In opposition to D & J's motion, Lord filed a memorandum wherein she asserted D & J's "personnel knew about Watts'[s] prior armed robberies and related shootings and appreciated the threat posed by Watts" yet failed to post a security guard at the entrance of Cash on the Spot. As a result, Lord asserted D & J's breach of its duty to her proximately caused her "catastrophic brain injuries."

Lord supplemented the memorandum with: (1) the deposition testimony of Darrell Starnes, who is the President of D & J and oversees the day-to-day operations of the corporation; (2) the deposition testimony of Boyd; (3) the affidavit of Robert Clark, a "private security expert" who opined D & J was aware of the threat posed by Watts and should have posted a security guard at the entrance of the business; and (4) newspaper articles and media coverage of the previous robberies committed by Watts.

After a hearing, the circuit court granted D & J's motion for summary judgment by order dated October 26, 2011. In so ruling, the court noted that at the time of the shooting in 2008

---

such circumstances in *Shipes,*" it declined to deviate from the approach taken in *Shipes. Id.* Applying the test espoused in *Shipes,* the court found Wal–Mart had no duty under South Carolina law to protect the plaintiff from an attack like the one she suffered. *Id.* at 333, 529 S.E.2d at 70. In reaching this conclusion, the court noted that Wal–Mart had "no notice of any comparable violent crimes occurring in the two years prior, and no incidents occurred on that particular night to put Wal–Mart on notice of an impending violent carjacking." *Id.* at 333, 529 S.E.2d at 70–71. Accordingly, because Wal–Mart had no duty to protect the plaintiff, it could not have negligently breached that duty. *Id.* at 333, 529 S.E.2d at 71.

"the law governing the scope of the duty of merchants to protect invitees against criminal acts of third parties in South Carolina was governed by *Miletic v. Wal–Mart Stores, Inc.*, 339 S.C. 327, 529 S.E.2d 68 (S.C.App.2000), citing *Shipes v. Piggly Wiggly St. Andrews, Inc.*, 269 S.C. 479, 484, 238 S.E.2d 167, 169 (1977)." However, the court recognized that during the pendency of the proceedings this Court issued its opinion in *Gopal II*, which "abandoned the imminent harm test [of *Shipes*] and adopted the balancing approach previously discussed in *Miletic*." Although the court believed *Gopal II* applied prospectively, it nevertheless analyzed the facts of the case under both *Shipes* and *Gopal II.*

Applying the "imminent harm test" enunciated in *Shipes*, the court rejected Lord's contention that D & J was aware of the specific and imminent harm. Even though Starnes warned his employees prior to the shooting that "a madman was on the loose," the court found there was no history of criminal activity on the premises of Cash on the Spot and there was no out of the ordinary behavior by Watts immediately prior to the shooting that would have put Lord or Boyd on notice of the shooting. As a result, the court determined D & J had no duty to protect Lord from the criminal actions of Watts.

Notwithstanding the circuit court's conclusion that *Gopal II* applied prospectively, the court proceeded to analyze Lord's claim using *Gopal II*. Pursuant to the balancing test of *Gopal II*, the court found Lord produced at least a scintilla of evidence that the crime was foreseeable. The court referenced the deposition testimony of Starnes and found it "clearly indicates that [D & J] actually did foresee the possibility of a third party criminal act, and even warned [its] employees to 'be on their toes, to look for suspicious people' because 'there was a madman ... on the loose.'" Despite this finding, the court ruled that Lord failed to provide any evidence the security measures taken by D & J were unreasonable given the risk. Specifically, the court concluded Clark's expert opinion was not sufficient to establish the need for hiring costly security guards as there was no evidence of prior crimes on the premises of Cash on the Spot. Ultimately, the court held D & J had no duty to hire a security guard because it had implemented reasonable security measures.

Following the denial of her motion to reconsider, Lord appealed the circuit court's order to the Court of Appeals. This Court certified the appeal pursuant to Rule 204(b) of the South Carolina Appellate Court Rules.

## II. Discussion

### A. Arguments

In challenging the circuit court's order, Lord contends the court erred in finding the "balancing approach" established by this Court in *Gopal II* applied prospectively. Because the balancing approach adopted in *Gopal II* "does not create liability where previously none existed," Lord maintains it should apply retroactively and control the resolution of the instant case.

Applying *Gopal II*, Lord asserts the court erred in granting summary judgment to D & J because she presented at least a scintilla of evidence showing a genuine issue of material fact as to each element of her negligence claim. Specifically, Lord asserts: (1) D & J owed a duty to her as she was a business invitee on the premises of Cash on the Spot; (2) the risk of harm to her was foreseeable because Starnes admitted he knew before the shooting that "there was a madman on the loose" and reviewed procedures with D & J employees regarding a response to a potential armed robbery; (3) D & J failed to post a security guard at the entrance of Cash on the Spot despite the foreseen risk of a shooting; (4) Clark's affidavit established that the shooting of Lord "most probably would not have occurred if D & J had posted a security guard"; and (5) there is evidence the shooting caused Lord to suffer profound neurological complications.

### B. Standard of Review

The parties presented this case in the posture of a motion for summary judgment; thus, it is governed by Rule 56(c) of the South Carolina Rules of Civil Procedure. This rule provides a motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. "An appellate court reviews the

granting of summary judgment under the same standard applied by the trial court pursuant to Rule 56, SCRCP." *Brockbank v. Best Capital Corp.*, 341 S.C. 372, 379, 534 S.E.2d 688, 692 (2000).

█ "Under Rule 56(c), the party seeking summary judgment has the initial responsibility of demonstrating the absence of a genuine issue of material fact." *Baughman v. Am. Tel. & Tel. Co.*, 306 S.C. 101, 115, 410 S.E.2d 537, 545 (1991). This initial responsibility may be discharged by pointing out to the trial court that there is an absence of evidence to support the non-moving party's case, and it is not necessary for the moving party to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.* Once the moving party carries its initial burden, the opposing party must do more than rest upon the mere allegations or denials of his pleadings, but must, by affidavit or otherwise, set forth specific facts to show that there is a genuine issue for trial. *Id.;* Rule 56(e), SCRCP.

█ "In determining whether any triable issues of fact exist, the court must view the evidence and all reasonable inferences that may be drawn from the evidence in the light most favorable to the non-moving party." *David v. McLeod Reg'l Med. Ctr.*, 367 S.C. 242, 247, 626 S.E.2d 1, 3 (2006). "[I]n cases applying the preponderance of the evidence burden of proof, the non-moving party is only required to submit a mere scintilla of evidence in order to withstand a motion for summary judgment." *Hancock v. Mid–South Mgmt. Co.*, 381 S.C. 326, 330, 673 S.E.2d 801, 803 (2009). "Summary judgment is not appropriate where further inquiry into the facts of the case is desirable to clarify the application of the law." *Lanham v. Blue Cross & Blue Shield of S.C.*, 349 S.C. 356, 362, 563 S.E.2d 331, 333 (2002). Moreover, because summary judgment is a drastic remedy, it should be cautiously invoked to ensure a litigant is not improperly deprived of a trial on disputed factual issues. *Madison ex rel. Bryant v. Babcock Ctr., Inc.*, 371 S.C. 123, 134, 638 S.E.2d 650, 655 (2006).

## C. Effect of Court's Adoption of the *Gopal II* Balancing Test in 2011

█ To resolve this appeal, we must first determine whether our decision in *Gopal II* should apply prospectively or

retrospectively and, in turn, to the instant case. In South Carolina, "[t]he general rule regarding retroactive application of judicial decisions is that decisions creating new substantive rights have prospective effect only, whereas decisions creating new remedies to vindicate existing rights are applied retrospectively." *Carolina Chloride, Inc. v. S.C. Dep't of Transp.*, 391 S.C. 429, 433, 706 S.E.2d 501, 503 (2011) (citation omitted). "Prospective application is required when liability is created where formerly none existed." *Id.* at 433–34, 706 S.E.2d at 503. "As a common rule, judicial decisions in civil cases are presumptively retroactive." *Miranda C. v. Nissan Motor Co.*, 402 S.C. 577, 586, 741 S.E.2d 34, 39 (Ct.App.2013).

 Applying the above-outlined rules, we find the balancing approach in *Gopal II* should be applied retrospectively because our decision created no new duty for business owners, but, rather, clarified the test in assessing the scope of this duty.

*Gopal II* involved a premises liability action that arose out of the shooting of Gerald Bass while he was a guest at the Super 8 Motel in Orangeburg, South Carolina. *Gopal II*, 395 S.C. at 132, 716 S.E.2d at 912. Gopal, Inc., which is a franchisee of Super 8, owned and operated the motel. *Id.* During the evening of September 28, 1999, Bass and his roommate, Wayne Kinlaw, were turning in for the evening when they received a knock at their door by a man that Bass had seen earlier that evening at a nearby convenience store. *Id.* The door was equipped with a peep hole and there was a large plate glass window beside the door. *Id.* After the third knock, Bass and Kinlaw opened the door without first looking to see who was there and then stepped outside. *Id.* When Bass refused the man's demand for money, the man shot Bass in the leg with a handgun and fled on foot. *Id.*

In September 2002, Bass filed a complaint alleging negligence against Gopal, Inc. and Super 8. *Id.* Gopal, Inc. and Super 8 each filed motions for summary judgment, which were granted by the circuit court. The Court of Appeals affirmed. *Bass v. Gopal, Inc.*, 384 S.C. 238, 680 S.E.2d 917 (Ct.App.2009) ("*Gopal I*"). This Court granted Bass's petition for a writ of certiorari to review the decision of the Court of Appeals. *Gopal II*, 395 S.C. at 133, 716 S.E.2d at 912.

In *Gopal II*, we considered whether the Court of Appeals erred in upholding the circuit court's finding that Gopal, Inc., as the appeal against Super 8 had been dismissed, did not have a duty to protect Bass from the criminal act of a third party. *Id.* Chief Justice Toal, writing for the majority, noted that the threshold question in any negligence action is whether the defendant owed a duty to the plaintiff. *Id.* at 134, 716 S.E.2d at 913. Although the Court recognized "an innkeeper is not the insurer of [the] safety of its guests," it stated that "an innkeeper 'is under a duty to its guests to take reasonable action to protect them against unreasonable risk of physical harm.' " *Id.* (quoting *Allen v. Greenville Hotel Partners, Inc.*, 405 F.Supp.2d 653, 659 (D.S.C.2005)). The Court explained that "a business owner has a duty to take a reasonable action to protect its invitees against the *foreseeable* risk of physical harm." *Id.* at 135, 716 S.E.2d at 913.

In assessing the foreseeability issue, the Court surveyed the approaches taken by jurisdictions across the country and identified four approaches: (1) under the "imminent harm rule," which was adopted by this Court in *Shipes* and cited in *Miletic*, the landowner owes no duty to protect patrons from violent acts of third parties unless he is aware of specific and imminent harm about to befall him; (2) pursuant to the second approach, which is known as the "prior or similar incidents test," foreseeability may be established only by evidence of previous crimes on or near the premises; (3) the third approach, which is known as the "totality of the circumstances test," requires the court to consider all relevant factual circumstances, including the nature, condition, and location of the land as well as prior similar incidents; and (4) under the fourth approach the court engages in a balancing test, which balances the degree of foreseeability of harm against the duty imposed. *Id.* at 135–39, 716 S.E.2d at 913–15.

■■■ After giving due consideration to each test and the associated policy implications, the Court adopted the balancing approach. *Id.* at 139, 716 S.E.2d at 915. In reaching this decision, the Court recognized that " '[t]he balancing approach acknowledges that duty is a flexible concept, and seeks to balance the degree of foreseeability of harm against the burden of the duty imposed.' " *Id.* at 138, 716 S.E.2d at 915 (quoting *McClung v. Delta Square Ltd. P'ship*, 937 S.W.2d

891, 901 (Tenn.1996)). The Court explained that "the more foreseeable a crime, the more onerous is a business owner's burden of providing security." *Id.* at 138, 716 S.E.2d at 915. Accordingly, "[u]nder this test, the presence or absence of prior criminal incidents is a significant factor in determining the amount of security required of a business owner, but their absence does not foreclose the duty to provide some level of security if other factors support a heightened risk." *Id.*

In adopting the balancing approach, the Court emphasized that it was not altering the "consistently imposed ... duty on business owners to employ reasonable measures to protect invitees from foreseeable harm." *Id.* at 139, 716 S.E.2d at 915. Rather, the Court "merely elucidate[d] how to determine (1) if a crime is foreseeable, and (2) given the foreseeability, determine the economically feasible security measures required to prevent such harm." *Id.* The Court further noted that "[t]he optimal point at which a dollar spent equals a dollar's worth of prevention will not always be apparent, but may be roughly ascertained with the aid of an expert, or some other testimony." *Id.* In replacing the "imminent harm test" adopted in *Shipes,* the Court found the "the balancing approach appropriately weighs both the economic concerns of businesses, and the safety concerns of their patrons." *Id.* By adopting this test, the Court hoped to " 'encourage a reasonable response to the crime phenomenon without making unreasonable demands.' " *Id.* at 138, 716 S.E.2d at 915–16 (quoting *McClung,* 937 S.W.2d at 902).

Applying the balancing approach to the facts of Bass's case, the Court found the Court of Appeals correctly affirmed the grant of summary judgment in favor of Gopal, Inc. *Id.* at 142, 716 S.E.2d at 917. In reaching this decision, the Court determined that Bass presented "at least some evidence the aggravated assault was foreseeable" because Bass produced a CRIMECAST report that showed, in 1999, the risk of rape, robbery, and aggravated assaults at the Super 8 as compared to the national average risk, the state average risk, and the county average risk. *Id.* at 141, 716 S.E.2d at 916. Based on this report, the Court found "the especial high probability of crime at the Super 8 compared to the national and state averages raised at least a scintilla of evidence that the crime against [Bass] was foreseeable." *Id.*

The Court, however, found Bass did not provide any evidence that Gopal Inc.'s preventative measures were unreasonable given the risk of criminal activity on the property. *Id.* at 142, 716 S.E.2d at 917. Although Bass presented the deposition testimony of an expert who "concluded the addition of a closed circuit camera or some type of additional security personnel would have been reasonable in light of his perceived risk," the Court found Bass "failed to provide any evidence that [Gopal, Inc.] should have expended more resources to curtail the risk of criminal activity that might have been probable." *Id.* Instead, the Court found determinative the expert's statement that "if ... this is [the] first time [a criminal incident occurred], there wasn't enough data for [Gopal, Inc.] to say he really needed to spend a bunch of money on surveillance cameras, a bunch of money on a full-time security guard or part-time, or train his employees to do a guard tour...." *Id.*[2]

Upon further review of *Gopal II*, we now definitively hold that this decision applies retrospectively. Significantly, we implicitly announced this rule in 2011 when we applied the balancing test to Bass's case, which arose out of a criminal act that occurred in 1999. As to the substance of our decision, there is no evidence to rebut the presumption that *Gopal II* is to be applied retrospectively because we did not create any new right, liability, or cause of action. Although *Gopal II* "replaced" the "outdated" imminent harm rule in *Shipes* with a balancing test, we did not alter the well-established duty of a merchant[3] to take reasonable action to protect invitees against

---

2. Justice Pleicones concurred in the majority's decision to affirm the grant of summary judgment in favor of Gopal, Inc.; however, he would have done so "on the ground that petitioner's negligence in leaving the safety of his motel room exceeded respondent's negligence, if any, as a matter of law." *Gopal II*, 395 S.C. at 143, 716 S.E.2d at 917 (citing *Gopal I*, 384 S.C. at 247, 680 S.E.2d at 921–22). Justice Pleicones further noted that he "perceive[d] little difference between our existing law [regarding the duty of an innkeeper to her guests], and the test adopted by the majority, other than the requirement for expert testimony, and reliance upon city/county statistics." *Id.* at 143, 716 S.E.2d at 918. If in fact the majority altered existing law, Justice Pleicones would have remanded to allow the parties an opportunity to address the newly announced test. *Id.*

3. Even though *Gopal II* involved an assessment of the duty of an innkeeper, this does not affect the disposition of this case involving a

an unreasonable risk of physical harm. Rather, this Court modified the scope of this duty because we "merely elucidated" how to determine (1) if a crime is foreseeable, and (2) the economically feasible security measures that are required to prevent the foreseeable harm. Thus, we apply *Gopal II* to the facts of instant case.

### D. Application of *Gopal II* Balancing Test to Instant Case

■ Applying the *Gopal II* balancing test, we hold the circuit court erred in granting summary judgment to D & J. Viewing the evidence in the light most favorable to Lord, we find she presented at least a scintilla of evidence to withstand the motion for summary judgment as to her negligence claim against D & J.

■ To prevail on a negligence claim, a plaintiff must establish duty, breach, causation, and damages. *Daniel v. Days Inn of Am., Inc.*, 292 S.C. 291, 295, 356 S.E.2d 129, 131 (Ct.App.1987). The key determination in the instant case is whether D & J breached its duty to take reasonable action to protect Lord, its business invitee, against the foreseeable risk of physical harm.

Regarding the foreseeability prong of *Gopal II*, Lord presented the deposition testimony of Starnes, the owner of D & J, and Boyd, the manager of Cash on the Spot the day of the shooting. Starnes and Boyd testified they were aware of the prior robberies in York County because the local newspapers had covered the incidents. Prior to the shooting, Starnes discussed the robberies with his employees and warned them to "be on their toes to look out for suspicious people" because there was a "madman on the loose." Based on the foregoing, we find, as did the circuit court, Lord produced at least some evidence that the shooting was foreseeable.

Having determined Lord produced some evidence as to foreseeability of the risk of harm, the question becomes whether D & J's preventative security measures were unreasonable given this risk. Lord primarily asserts that D & J should have posted a security guard at the entrance of Cash

merchant because "the answer to whether a defendant has breached any duty remains the same under either analysis." *Gopal I*, 384 S.C. at 245, 680 S.E.2d at 920.

on the Spot. Although this Court in *Gopal II* acknowledged the significant cost associated with hiring security guards absent evidence of prior crimes on the premises, we stated that a plaintiff may produce evidence of this prong through the testimony of an expert. Here, unlike the plaintiff in *Gopal II*, Lord presented expert testimony precisely on this point.

Robert Clark, Lord's expert in private security, reviewed the media coverage of the prior armed robberies, the deposition testimonies of Starnes and Boyd, and conducted a field investigation of the security measures used at Cash on the Spot. Based on his investigation, Clark opined that D & J "had a duty, in the exercise of reasonable care, to post a security guard at the entrance of" Cash on the Spot in order to "provide reasonable protection for its employees and customers against the threat of a serial armed robber who had shot two store clerks and a bystander in two previous armed robberies of businesses that fit the profile of D & J's business." He further stated, "The armed robbery attempt during which Ida Lord was shot most probably would not have occurred if D & J had posted a security guard at the entrance of its check cashing location on Cherry Road in Rock Hill, South Carolina."

Under the specific facts presented in this case, we find the expert testimony was sufficient to create a question of fact for the jury. *See* Louis A. Lehr, Jr., 1 *Premises Liability* 3d § 4:7 (Supp.2013) ("A common type of claim is one predicated on security guards the complete absence, or an inadequate number and/or inadequate training. A typical case is one in which an expert testifies that the presence of a security [guard] would have prevented the crime. Courts have held that such expert testimony is sufficient to make a fact question for the jury." (footnote omitted)); *see also Midkiff v. Hines*, 866 S.W.2d 328, 333 (Tex.Ct.App.1993) (reversing grant of summary judgment where "[o]ne expert testified that if a uniformed security guard had been stationed on the property as a visible deterrent, the murder would have been deterred or prevented"). *See generally* E.L. Kellett, Annotation, *Private Person's Duty and Liability for Failure to Protect Another Against Criminal Attack by Third Person*, 10 A.L.R.3d 619 (1966 & Supp.2013) (referencing *Shipes, Miletic*, and *Gopal II* as well as other state and federal cases analyzing a

business owner's duty to protect its customers from criminal activity by third parties).

## III. Conclusion

Given the summary judgment posture of this case, we conclude it is premature to deprive Lord of the opportunity to present her case to a jury. As we noted in *Gopal II*, "whether a business proprietor's security measures were reasonable in light of a risk will, at many times, be identified by an expert." *Gopal II*, 395 S.C. at 141, 716 S.E.2d at 917. Here, Lord presented such expert testimony. At this stage, it is not the role of the circuit court or this Court to determine whether Lord will prevail on her negligence claim, but whether she presented a mere scintilla of evidence to withstand D & J's motion for summary judgment.

We emphasize that our decision should not be construed as requiring all merchants to hire costly security guards.[4] Instead, we merely find that it is for a jury to decide whether D & J employed reasonable security measures to fulfill its duty to protect Lord from the foreseeable risk of a shooting. Clearly, D & J recognized that it was susceptible to an armed robbery at Cash on the Spot as it had installed security cameras and placed bars on the office windows. It also sought to protect its employees by placing them behind bulletproof glass, equipping them with panic buttons, and providing them with immediate access to a silent alarm. The circumstances of this case, however, presented a heightened risk of danger

---

4. The dissent clearly misconstrues our decision, stating "Today the Court holds that a merchant has a duty to provide a security guard where random acts of criminal violence occur miles away from the business." Such an interpretation is erroneous as we make no such definitive determination regarding a merchant's duty. Rather, we adhere to our decision in *Gopal II* that a plaintiff, who offers evidence of whether a business proprietor's security measures were reasonable in light of a risk, may withstand a motion for summary judgment. Lord, as the party opposing the motion for summary judgment, properly offered expert testimony that D & J's preventative security measures were unreasonable given the foreseeable risk of criminal activity. Moreover, the dissent places great emphasis on the fact that the prior shootings occurred two or more miles away from D & J. This fact, however, does not defeat or weaken Lord's position as it would take no more than five minutes for one to travel such a short distance. Accordingly, unlike the dissent, we cannot find that D & J was entitled to summary judgment as a matter of law.

beyond the ordinary operation of Cash on the Spot. As evidenced by Starnes's deposition testimony, there was a foreseeable risk of a shooting at Cash on the Spot given the rash of armed robberies that culminated in the shootings of store clerks and customers at nearby businesses. Under these unique facts, we cannot find that D & J was entitled to judgment as a matter of law on Lord's cause of action for negligence.

Accordingly, the order of the circuit court is

**REVERSED AND REMANDED.**

TOAL, C.J., and HEARN, J., concur. PLEICONES, J., concurring in a separate opinion. KITTREDGE, J., dissenting in a separate opinion.

Justice PLEICONES.

I concur in the result reached by the majority in this case. I write separately because, as the majority notes, I do not believe *Gopal II*[5] wrought any change in the law which requires a prospective/retrospective analysis.

Further, while I agree with the dissent that, "... the law does not impose upon a business owner a duty to provide a security guard," I do not read the majority opinion to require that measure in this or any case.

The duty as correctly pointed out by both the majority and the dissent is one of reasonable care to protect invitees from unreasonable risk of harm. Whether the jury would have valued Clark's opinion that a security guard was required in this case in order to fulfill that duty poses questions of credibility and fact.

Justice KITTREDGE.

Today the Court holds that a merchant has a duty to provide a security guard where random acts of criminal violence occur miles away from the business. Because I believe, as a matter of law, that no such duty exists, I would affirm. It is also my judgment that a proper application of *Gopal II* would result in affirming the grant of summary judgment by

---

5. *Bass v. Gopal, Inc.,* 395 S.C. 129, 716 S.E.2d 910 (2011).

the able trial judge. *Bass v. Gopal,* 395 S.C. 129, 716 S.E.2d 910 (2011). As a result, I respectfully dissent.

Respondent operates a check cashing business, known as Cash on the Spot, on Cherry Road in Rock Hill, South Carolina.[6] On January 28, 2008, Phillip Watts shot an employee of the Saltwater Seafood Market during an armed robbery. The Saltwater Seafood Market is located in Rock Hill, two miles from Respondent's business. Eight days later, on February 5, Watts robbed the John Boy's Valero and shot a customer and an employee. John Boy's Valero is located in Fort Mill, South Carolina, approximately eight miles from Respondent's business. Nine days later on February 14, Watts shot Appellant at Respondent's business. There is no evidence of any violent crimes occurring either on or in the immediate vicinity of Respondent's business.

The majority states the "key determination" in this case is whether Respondent "breached its duty to take reasonable steps to protect Lord, its business invitee, against foreseeable risk of physical harm." A business owner, of course, owes a duty of reasonable care to protect its invitees against the foreseeable risk of physical harm, a position which Respondent has never contested. But that is not the question before this Court. Rather, this case should be decided on the limited theory advanced by Appellant to defeat summary judgment— that is, whether the law imposed a duty on Respondent's business to provide a security guard. Under the circumstances presented, I would hold as a matter of law that no such duty existed.

The sole argument presented by Appellant to the trial court in opposition to the summary judgment motion is found in the affidavit of a private investigator and security consultant, Robert Clark, who opined that Respondent had a "duty . . . to post a security guard at the entrance to its check cashing location on Cherry Road in Rock Hill." Appellant's counsel asserted at the summary judgment hearing that "in this case . . . the duty is the duty to have a security guard." Appellant, to her credit, has pursued this same limited argument on appeal. In her brief, we find the following statements: "Despite their knowledge and appreciation of the threat posed by

---

6. Numerous commercial establishments are located on Cherry Road.

Watts, [Respondent's] personnel did not have a security guard posted at the entrance of the [business] location"; the risk of harm "weighs heavily in the balance and justifies a requirement that [Respondent] post a security guard"; and under the circumstances, the law imposed on Respondent a "duty to post a security guard until the threat by Watts had passed." Appellant's Br. at 3, 7, 8.

Appellant's assignment of error on appeal conflates the legal question of duty with the scintilla rule concerning factual matters in reviewing a summary judgment motion. Appellant argues "[t]here is a genuine issue of material fact on the question of whether [Respondent] owed a duty to [Appellant] to post a security guard at its business to protect her from a foreseen criminal act by [the shooter]." Appellant's Br. at 6. The majority has accepted Appellant's invitation to apply the scintilla rule to the legal question of duty, observing that at the summary judgment posture, "it is not the role of the circuit court or this Court to determine whether [Appellant] will prevail on her negligence claim." Yet, the question of duty is one for the court. While I acknowledge the mere scintilla standard for summary judgment, " '[a] motion for summary judgment on the basis of the absence of a duty is a question of law for the court to determine.' " *Cole v. Boy Scouts of Am.*, 397 S.C. 247, 251, 725 S.E.2d 476, 478 (2011) (quoting *Oblachinski v. Reynolds*, 391 S.C. 557, 560, 706 S.E.2d 844, 845 (2011)). Only when a legal duty is established does the issue of "whether the defendant breached that duty [become] a question of fact." *Id.* (citing *Singletary v. S.C. Dep't. of Educ.*, 316 S.C. 153, 157, 447 S.E.2d 231, 233 (Ct.App. 1994)).

As acknowledged, Respondent owed a duty of reasonable care to its invitees, and whether a business owner has satisfied or breached that duty is generally a fact question for the jury. Appellant, however, has framed the question narrowly by seeking to impose a duty on Respondent to provide a security guard. I would hold that under the undisputed facts of this case, the law does not impose upon a business owner a duty to provide a security guard.

564

The trial court analyzed this case under *Shipes*[7] and *Gopal II*.[8] In evaluating the *Gopal II* balancing test, while the trial court found there was some evidence of foreseeability,[9] it examined the sole theory of duty advanced by Appellant and concluded that the law does not impose on a business owner a duty to provide a security guard under the circumstances.[10] The trial court's order concludes:

In *Gopal*, the Supreme Court found that "the hiring of security personnel is [no small burden]. Considering a business's economic interest, it is difficult to imagine an instance where a business would be required to employ costly security guards in the absence of evidence of prior crimes on the premises." The facts of this case are no exception. There is no evidence of prior crimes on the premises of Cash on the Spot. Therefore, if the rationale of the [Appellant] is taken to its logical conclusion, every business in York County that was manned by one or two people and had cash on hand had a legal duty to hire a security guard from February 5 onward, either until the

---

7. *Shipes v. Piggly Wiggly St. Andrews, Inc.*, 269 S.C. 479, 238 S.E.2d 167 (1977).

8. *Bass v. Gopal*, 395 S.C. 129, 716 S.E.2d 910 (2011). I join the majority in utilizing the balancing test adopted in *Gopal II*.

9. Evidence of foreseeability comes from Respondent's owner's warning to the employees to be vigilant, because "there [was] a madman on the loose." *See Melton v. Boustred*, 183 Cal.App.4th 521, 538, 107 Cal. Rptr.3d 481, 496 (6th Dist.2010) ("[R]andom, violent crime is endemic in today's society. It is difficult, if not impossible, to envision any locale open to the public where the occurrence of violent crime seems improbable." (quotation omitted)). Given the two prior robberies and shootings occurred two or more miles away, and the complete absence of any serious crimes on Respondent's premises, I would not use Respondent's owner's "madman on the loose" statement to impose a duty on the business to provide a security guard.

10. Although not determinative in resolving this appeal, I note the employees of Respondent were separated from the customers by bullet-proof glass and wore panic buttons around their neck. Moreover, prior to the robbery, Respondent's employees attended a meeting where the policies and procedures regarding armed robberies were discussed in order to prepare them for possible future incidents. Whether these measures were reasonable is not before us, for Appellant proceeded on the sole theory that the law imposed a duty on Respondent to provide a security guard.

assailant was caught or to some unknown time in the future when the threat was no longer imminent. Imposing such a heavy burden on small businesses, based on these facts, is both unreasonable and economically unfeasible.

The facts of this case are tragic, the trauma and injuries to Appellant horrific. But the question of whether the law imposes a duty on a business to provide security guards should follow the *Gopal II* framework, which I am convinced answers the question "no" under the facts of this case. Because I believe the trial court struck the proper balance in evaluating the legal question of duty and correctly granted summary judgment, I would affirm.