786 S.E.2d 443

**Thomas EASTERLING, Appellant,**

**v.**

**BURGER KING CORPORATION and Capital Restaurant Group, LLC, Respondents.**

**Appellate Case No. 2014–000338.**
**No. 5404.**

Court of Appeals of South Carolina.

Heard Nov. 10, 2015.
Decided May 18, 2016.

William Mullins McLeod, Jr. and David Ellis Roberts, both of McLeod Law Group, LLC, of Charleston, for appellant.

John L. McDonald, Jr. and Christina Rae Fargnoli, both of Clawson & Staubes, LLC, of Charleston, for respondents.

WILLIAMS, J.

Thomas Easterling appeals the circuit court's grant of summary judgment in favor of Burger King Corporation and Capital Restaurant Group, LLC (collectively "Burger King"), arguing the court erred in failing to (1) find Burger King breached its duty to take reasonable action to protect him against a foreseeable risk of physical harm; (2) find Burger King had notice of and created an unreasonable and dangerous condition on its premises; (3) find Burger King breached its duty of care by deviating from its own internal policies; and (4) properly rule upon the arguments presented and vacate the grant of summary judgment in light of his Rule 59(e), SCRCP, motion. We affirm.

**FACTS/PROCEDURAL HISTORY**

This case stems from an attack on Easterling that occurred in the drive-through and parking lot of a Burger King restaurant located at 945 Folly Road in Charleston, South Carolina.

At approximately 10:00 P.M. on July 8, 2008, Easterling was waiting to place his order at Burger King when Gary Eastwood, who was in a truck directly behind him in line, rear-ended Easterling. Easterling explained he did not engage Eastwood, whom he had never seen before, after the initial contact because he "thought it was just an accident." According to Easterling, he "just wanted to get [his] food and go home." Easterling further conceded he did not report the initial accident to anyone at Burger King when he placed his order.

After Easterling placed his order and entered the drive-through lane, however, Eastwood began "pushing the accelerator but keeping his foot on the brake, so the tires were spinning. It was making loud screeching noises, and smoke was going everywhere." As Easterling moved forward in the drive-through lane to pick up his food, Eastwood began spinning his tires again and then rear-ended Easterling a second time. Easterling described this impact as a "hard hit," stating it "jarred [his] entire upper body back" when Eastwood rear-ended him again. According to Easterling, at this point,

"[t]he people inside Burger King were looking out the window to see what was going on."

Following the second impact, Easterling stepped out of his vehicle to assess the damage. While Easterling was assessing the damage, Eastwood exited his vehicle and approached Easterling in a "very aggressive" fashion. Eastwood lunged at Easterling, put his shoulder in Easterling's stomach, and grabbed Easterling around the waist. At some point during the altercation, Easterling hit the curb, tripped, and fell backward down the embankment. Easterling stated he must have bumped his head when he hit the ground because he was "knocked unconscious." When Easterling regained consciousness, Eastwood was on top of him and proceeded to violently bite his nose off.

Easterling confirmed that Eastwood attacked him approximately two minutes after getting out of his vehicle. Further, Easterling agreed the attack was "totally unexpected" and "happened so quickly that ... there was really no time to make a run inside the restaurant." According to Easterling, he "had no idea what [Eastwood] was going to do" when Eastwood exited his vehicle. Regarding the time frame of the incident, Easterling stated the following:

Q: And Tommy, from the time that you got into the drive-through line until ... the customer that helped you—picked [Eastwood] up off of you, how long a time period are we talking about that expired? Do you have any—

A: Like I said, that's a notoriously slow drive-through. To me, it felt like an eternity, but being four cars in front of me, I would say from the time that the guy helped me up, I would say eight minutes.

Q: And ... from the time of the second impact, and when you got out to go check the damage to your car, what kind of time elapsed there where he charged you and basically tackled you and bit your nose off?

A: Just a matter of a few minutes.

(emphasis omitted).

Kimberly Jones, the manager of Burger King, worked the drive-through window at the time of the incident and recalled taking Easterling's and Eastwood's orders that evening. Jones testified that, when a car pulls up to the drive-through

speaker box, she can hear everything going on inside and outside of the car through her headset. Jones, however, heard no honking, tire screeching, or yelling while Easterling and Eastwood were in the drive-through line waiting on their food.

Jones was unaware of Eastwood's behavior until the car in front of Easterling pulled up to the drive-through window, at which point she heard a customer yelling and honking the horn. Further, Jones indicated she did not know Eastwood was the one causing the commotion until Easterling pulled up to the window. Jones testified as follows regarding the time frame:

Q: So from the time that you started serving—or the time that you saw the car in front of [Easterling], where you kind of looked out the window and saw what was going on, how long do you think elapsed between then and the time [Easterling] got to your window?

A: From the time the car got in front of [Easterling]?

Q: Yeah.

A: Basically, maybe 10, 12 minutes. From the whole incident, or just [Easterling] getting to my window?

Q: [Easterling] getting to your window.

A: Maybe five minutes.

Jones initially thought nothing of Eastwood blowing his horn and yelling. According to Jones, it was normal for people who were in a rush to honk in the drive-through because "they don't know once you get in there, you can't get out." Nevertheless, Jones then observed Eastwood rear-end Easterling's car. Jones stated Easterling jumped out of his car seconds after she saw Eastwood rear-end him and the altercation happened very quickly. As soon as Jones saw Easterling's injuries, she called the police.

When asked how much time passed from the commotion between the cars to the police being called, Jones estimated it was "15, 20 minutes, maybe, for all of that to happen." Jones admitted no one at Burger King called the police until they saw Easterling's face. Jones had never seen anything like this before, and she felt as if she acted as quickly as possible under the circumstances. According to Jones, a police officer

at a nearby establishment arrived on the scene "less than a minute" after she called.

Jones did not remember the police ever being called to that Burger King for any issues other than automobile accidents. Prior to this incident, Jones had never witnessed someone intentionally rear-end another customer in the drive-through lane. Likewise, she was unaware of any violent crimes, fights, or other physical altercations ever taking place at Burger King. Jones did not think the Burger King was an unsafe place to work, nor did she feel it was located in an unsafe area.

Deputy Will Muirhead, of the Charleston County Sheriff's Office, responded to the incident. Based upon his investigation, Deputy Muirhead determined this was a "quick" altercation that, in a matter of seconds, evolved into a tragedy. Deputy Muirhead stated the scuffle lasted only minutes, and he did not believe "anybody knew what was going to happen until it happened." In Deputy Muirhead's opinion, this was a random criminal attack. While he noted a drive-through was "a common area for accidents to occur," Deputy Muirhead did not consider a drive-through "to be a common area for criminal activity." Further, he did not find the Burger King in question to be an unsafe establishment.

Easterling filed the instant lawsuit against Burger King, asserting negligence causes of action for losses and damages he sustained during the July 8, 2008 attack. Burger King filed an answer denying any liability. Following the completion of discovery, Burger King moved for summary judgment on the grounds that no genuine issue of material fact existed and it owed no legal duty to Easterling. The parties both filed memoranda addressing whether summary judgment was appropriate.

The circuit court held a hearing on the summary judgment motion and took the matter under advisement. Thereafter, the court filed a Form 4 order granting Burger King's motion to dismiss. The court then filed a subsequent Form 4 order amending its previous order, in which the court granted Burger King's motion for summary judgment.

Easterling filed a Rule 59(e) motion to alter or amend the grant of summary judgment, and the circuit court denied Easterling's motion in a Form 4 order. This appeal followed.

## ISSUES ON APPEAL

I. Did the circuit court err in failing to find Burger King breached its duty to take reasonable action to protect Easterling against a foreseeable risk of physical harm?

II. Did the circuit court err in failing to find Burger King created an unreasonable and dangerous condition on its premises?

III. Did the circuit court err in failing to find Burger King breached its duty of care by deviating from its own internal policies?

IV. Did the circuit court err in failing to properly rule upon the arguments presented and vacate the grant of summary judgment in light of Easterling's Rule 59(e) motion?

## STANDARD OF REVIEW

 An appellate court reviews a grant of summary judgment by applying the same standard as the circuit court under Rule 56(c), SCRCP. *Woodson v. DLI Props., LLC,* 406 S.C. 517, 528, 753 S.E.2d 428, 434 (2014).

> Summary judgment is proper if, viewing the evidence and inferences to be drawn therefrom in a light most favorable to the nonmoving party, the pleadings, depositions, answers to interrogatories, admissions, and affidavits, if any, show ... no genuine issue of material fact [exists] and ... the moving party is entitled to judgment as a matter of law.

*Id.* "In a negligence case, where the burden of proof is a preponderance of the evidence standard, the non-moving party must only submit a mere scintilla of evidence to withstand a motion for summary judgment." *Bass v. Gopal, Inc.,* 395 S.C. 129, 134, 716 S.E.2d 910, 912 (2011).

## LAW/ANALYSIS

### I. Burger King's Duty to Easterling

 Easterling first contends the circuit court erred in granting summary judgment because Burger King breached its duty to take reasonable action to protect him against a foreseeable risk of physical harm. We disagree.

In a negligence action, a plaintiff must show that (1) the defendant owes a duty of care to the plaintiff, (2) the defendant breached the duty by a negligent act or omission, (3) the defendant's breach was the actual and proximate cause of the plaintiff's injury, and (4) the plaintiff suffered an injury or damages.

*Madison ex rel. Bryant v. Babcock Ctr., Inc.,* 371 S.C. 123, 135, 638 S.E.2d 650, 656 (2006).

"[F]or liability to attach based on a theory of negligence, the parties must have a relationship recognized by law as providing the foundation for a duty to prevent an injury." *McCullough v. Goodrich & Pennington Mortg. Fund, Inc.,* 373 S.C. 43, 47, 644 S.E.2d 43, 46 (2007). "In any negligence action, the threshold issue is whether the defendant owed a duty to the plaintiff." *Gopal,* 395 S.C. at 134, 716 S.E.2d at 913. "The court must determine, as a matter of law, whether the law recognizes a particular duty." *Steinke v. S.C. Dep't of Labor, Licensing & Regulation,* 336 S.C. 373, 387, 520 S.E.2d 142, 149 (1999).

The parties in the case at hand agree that Easterling was an invitee. *See Sims v. Giles,* 343 S.C. 708, 716, 541 S.E.2d 857, 861 (Ct.App.2001) ("An invitee is a person who enters onto the property of another at the express or implied invitation of the property owner." (quoting *Goode v. St. Stephens United Methodist Church,* 329 S.C. 433, 441, 494 S.E.2d 827, 831 (Ct.App.1997))). "The duty of a storeowner to its invitees is to take reasonable care to protect them." *Bullard v. Ehrhardt,* 283 S.C. 557, 559, 324 S.E.2d 61, 62 (1984); *see also Sims,* 343 S.C. at 718, 541 S.E.2d at 863 ("The owner of property owes to an invitee or business visitor the duty of exercising reasonable or ordinary care for his safety, and is liable for injuries resulting from the breach of such duty."). As our supreme court has clarified, "a business owner has a duty to take reasonable action to protect its invitees against the *foreseeable* risk of physical harm." *Gopal,* 395 S.C. at 135, 716 S.E.2d at 913.

In *Gopal,* our supreme court reviewed four tests that various jurisdictions use to determine foreseeability. 395 S.C. at 135–39, 716 S.E.2d at 913–16 (discussing the imminent harm rule, prior or similar incidents test, totality of the circum-

stances approach, and balancing test). "After giving due consideration to each test and the associated policy implications, the [*Gopal* c]ourt adopted the balancing approach." *Lord v. D & J Enters., Inc.,* 407 S.C. 544, 555, 757 S.E.2d 695, 700 (2014) (citing *Gopal,* 395 S.C. at 139, 716 S.E.2d at 915).

In reaching this decision, the [c]ourt recognized that "[t]he balancing approach acknowledges that duty is a flexible concept, and seeks to balance the degree of foreseeability of harm against the burden of the duty imposed." The [c]ourt explained that "the more foreseeable a crime, the more onerous is a business owner's duty of providing security." *Id.* at 555–56, 757 S.E.2d at 700 (second alteration in original) (citations omitted).

▮ Under the balancing test, "the presence or absence of prior criminal incidents is a significant factor in determining the amount of security required of a business owner, but their absence does not foreclose the duty to provide some level of security if other factors support a heightened risk." *Gopal,* 395 S.C. at 138, 716 S.E.2d at 915.

In adopting the balancing approach, the [*Gopal* c]ourt emphasized that it was not altering the "consistently imposed ... duty on business owners to employ reasonable measures to protect invitees from foreseeable harm." Rather, the [c]ourt "merely elucidate[d] how to determine (1) if a crime is foreseeable, and (2) given the foreseeability, determine the economically feasible security measures required to prevent such harm." The [c]ourt further noted that "[t]he optimal point at which a dollar spent equals a dollar's worth of prevention will not always be apparent, but may be roughly ascertained with the aid of an expert, or some other testimony." In replacing the "imminent harm test" adopted in *Shipes,*[1] the [c]ourt found ... "the balancing approach appropriately weighs both the economic concerns of businesses[ ] and the safety concerns of their patrons." By

---

1. *Shipes v. Piggly Wiggly St. Andrews, Inc.,* 269 S.C. 479, 484, 238 S.E.2d 167, 169 (1977) (adopting the imminent harm rule, under which a landowner owes no duty to protect invitees from violent acts of third parties, unless the owner knows or has reason to know "acts are occurring or about to occur on the premises that pose imminent probability of harm to an invitee"), *abrogated by Gopal,* 395 S.C. at 138–39, 716 S.E.2d at 915.

adopting this test, the [c]ourt hoped to "encourage a reasonable response to the crime phenomenon without making unreasonable demands."

*Lord,* 407 S.C. at 556, 757 S.E.2d at 701 (third and fifth alterations in original) (internal citations omitted).

In the instant case, Easterling argues Burger King should be held liable because it had actual knowledge of the altercation prior to him sustaining injuries from Eastwood. According to Easterling, Jones "witnessed the attack occurring for a lengthy period ... and, nonetheless, consciously chose to allow the assault to ensue instead of contacting law enforcement or attempting to intervene." Easterling further contends Burger King had notice of prior criminal incidents on its premises and, thus, had an affirmative duty to provide security personnel or implement other security measures to protect its customers from foreseeable harm.

Initially, we find Easterling's argument regarding Burger King's actual notice to be misplaced because, in raising this issue, he relies heavily upon the imminent harm rule from *Shipes.*[2] As noted above, our supreme court set forth a new

---

2. Both parties direct our attention to four other cases in which our courts have addressed a business's liability to invitees for the crimes of third parties. *See Bullard,* 283 S.C. at 559, 324 S.E.2d at 62 (holding, as a matter of law, a bar could not have foreseen its patron throwing a bottle and, therefore, no duty arose that could have been breached because it happened spontaneously, leaving no time for the bar to try to prevent something of which it had no knowledge or reason to know would happen); *Munn v. Hardee's Food Sys., Inc.,* 274 S.C. 529, 531, 266 S.E.2d 414, 415 (1980) (holding that evidence indicating a group of people met under spontaneous circumstances as a result of some derogatory, racial comments made outside of the Hardee's restaurant, and not in the presence of its employees, was insufficient to show Hardee's knew or had reason to know such acts were occurring or about to occur and, thus, was insufficient to establish the restaurant's liability for the decedent's fatal injuries); *Miletic v. Wal–Mart Stores, Inc.,* 339 S.C. 327, 332–33, 529 S.E.2d 68, 70–71 (Ct.App.2000) (holding the store did not owe a duty to protect its customer from the criminal acts of third parties because it had no notice of comparable assaults in the area in the past two years and was not the type of operation that attracted or provided a climate for crime); *Callen v. Cale Yarborough Enters.,* 314 S.C. 204, 206, 442 S.E.2d 216, 218 (Ct.App. 1994) (declining to hold Hardee's liable for the crimes of third persons, despite knowledge that numerous other violent incidents had occurred in prior years, because no incidents that evening put the restaurant on notice of unrest or potential for violence and Hardee's was not the type

rule in *Gopal.* Accordingly, we must analyze the scope of Burger King's duty by employing the balancing test to determine (1) if a crime was foreseeable, and (2) given the foreseeability of the crime, the economically feasible security measures that were required to prevent such harm.

Turning to the foreseeability prong, Easterling introduced a prior incidents report for this particular Burger King location that spanned 2002–2008. While the report demonstrated a pattern of police responding to calls at the Burger King for various problems,[3] it revealed only one incident of armed robbery occurring on Burger King's premises in 2004.[4] In Jones's deposition testimony, she confirmed that commotion was not infrequent in the Burger King drive-through, indicating accidents were common and drunken people would often come through the lane. According to Jones, customers would become frustrated while waiting on their orders and start honking their horns and yelling at each other. Jones could not remember any physical altercations taking place in the drive-through, but she did recall a time in which robberies were taking place around the Burger King that necessitated the restaurant hiring an off-duty police officer for a week.

---

of operation that attracted or provided a climate for crime). Although *Bullard, Munn, Miletic,* and *Callen* seem to be directly on point at first blush, the courts in these cases applied the imminent harm rule from *Shipes* in determining liability. Because we must apply the *Gopal* framework, these cases are not controlling. Our focus is not on whether Burger King knew or should have known Eastwood was about to physically attack Easterling in the drive-through on that particular evening, but rather if a crime of that nature was foreseeable to Burger King balanced against the economically feasible security measures required to prevent such harm.

3. The prior incidents report for this Burger King location shows most of the calls to which police responded were for car accidents, disturbances, theft, suspicious persons, and other petty or nonphysical crimes.

4. Easterling also submitted a crime report for the half-mile radius surrounding Burger King that spanned 2002–2012. Given that his expert, Dr. Kirkham, stated it would be unreasonable to expect a business to be aware of all crimes going on in its area, we decline to rely upon this report as evidence of foreseeability. *See Gopal,* 395 S.C. at 141, 716 S.E.2d at 917 (stating "a determination of whether a business proprietor's security measures were reasonable in light of a risk will, at many times, be identified by an expert").

Dr. George Kirkham, Easterling's criminology and security expert, testified that—based upon his review of the prior incidents report as well as the nightly disturbances Jones recounted in her testimony—Burger King was aware of "road rage" problems in its drive-through. Dr. Kirkham also testified regarding the problems associated with drive-through lanes in general, but conceded he had no knowledge of any physical assaults taking place at this Burger King. In our view, an isolated armed robbery incident that occurred four years prior to the July 8, 2008 incident—coupled with evidence of car accidents and customer frustration in the drive-through that never escalated beyond honking and yelling—is insufficient to establish a physical assault was foreseeable. Further, although the prior incidents report indicated a pattern of police responding to problems at this Burger King, none of the incidents were remotely similar to that which occurred on the night in question. Accordingly, we find Easterling failed to produce any evidence a physical assault was foreseeable to Burger King.

Even if the crime was foreseeable, we find Easterling failed to produce any evidence that Burger King's security measures were unreasonable. Dr. Kirkham testified that "[t]he most significant thing [Burger King] could have done would have been to train [its] employees—managers, line workers, cooks, people working the windows—train everyone there ... to recognize suspicious situations ... [and] call the police immediately." While we certainly agree this is an economically feasible security measure, based upon the record before us, we are unable to ascertain how Burger King failed to implement it in this case. All accounts indicate the incident, while tragic, happened very quickly and created only a small window of time within which Burger King's employees could react and call for assistance. Burger King's employees did, however, call the police once they became aware of the severity of the situation.

Easterling argues Burger King had a duty to hire a police officer to patrol the restaurant at night based upon the fact it had done so in the past. Nevertheless, Easterling's expert, Dr. Kirkham, equivocated as to whether it was necessary for Burger King to institute such a measure, explaining he did not "have enough information ... to know who and how and when

security or off-duty police should be deployed there." As our supreme court has noted, "the hiring of security personnel is no small burden." *Gopal,* 395 S.C. at 141, 716 S.E.2d at 916–17. Although Burger King previously hired an off-duty police officer, this was in response to a string of armed robberies in the area—not on its premises—and was only a temporary solution. Given the evidence regarding the nature of prior incidents at this Burger King location, as well as a lack of testimony from Easterling's expert calling for such a measure, we find it would be unreasonable to require Burger King to hire security personnel. Thus, we find Easterling failed to present a mere scintilla of evidence that (1) Burger King's preventative actions were unreasonable or (2) it should have expended more resources to curtail the risk of criminal activity on its premises.

Based on the foregoing, even when casting the evidence in a light most favorable to the nonmoving party, we find Easterling failed to produce any evidence that Burger King did not execute economically feasible security measures to prevent a physical assault in its drive-through. Therefore, we affirm the circuit court's grant of summary judgment in favor of Burger King as to this issue.

## II. Unreasonable and Dangerous Condition

Next, Easterling contends Burger King should be held liable for his injuries because Burger King created an unreasonable and dangerous condition on its premises by constructing a drive-through lane adjacent to an embankment. Easterling claims he was unable to exit the drive-through lane to safety because of the embankment. We disagree.

"A merchant is not an insurer of the safety of his customer but owes only the duty of exercising ordinary care to keep the premises in a reasonably safe condition." *Garvin v. Bi–Lo, Inc.,* 343 S.C. 625, 628, 541 S.E.2d 831, 832 (2001). "A merchant is not required to maintain the premises in such condition that no accident could happen to a patron using them." *Id.* at 629 n. 1, 541 S.E.2d at 833 n. 1.

To recover damages for injuries caused by a dangerous or defective condition on a storekeeper's premises, the plaintiff must show either (1) that the injury was caused by a specific

act of the [storekeeper] which created the dangerous condition; or (2) that the [storekeeper] had actual or constructive knowledge of the dangerous condition and failed to remedy it.

*Id.* at 628, 541 S.E.2d at 832. "The property owner has a duty to warn an invitee only of latent or hidden dangers of which the property owner has or should have knowledge." *Harris v. Univ. of S.C.*, 391 S.C. 518, 524, 706 S.E.2d 45, 48 (Ct.App. 2011) (quoting *Sides v. Greenville Hosp. Sys.*, 362 S.C. 250, 256, 607 S.E.2d 362, 365 (Ct.App.2004)). "A property owner generally does not have a duty to warn others of open and obvious conditions, but a landowner may be liable if the landowner should have anticipated the resulting harm." *Id.* (quoting *Sides*, 362 S.C. at 256, 607 S.E.2d at 365).

Based upon our review of the record, we hold Burger King owed no duty to warn Easterling of the embankment because it was an open and obvious condition on the premises. *See id.* (noting a property owner generally has no duty to warn others of open and obvious dangers). Moreover, we find Burger King could not have anticipated a brutal physical altercation arising from its construction of a drive-through lane directly adjacent to an embankment. *Cf. id.* (stating "a landowner may be liable if the landowner should have anticipated the resulting harm" (quoting *Sides*, 362 S.C. at 256, 607 S.E.2d at 365)). We also note that Easterling—who was parked at the front of the line when Eastwood rear-ended him a second time—could have chosen to exit the drive-through instead of getting out of his car and approaching Eastwood's vehicle. Although Easterling contends the embankment trapped him in the drive-through, the record indicates he was completely free to leave at the time he exited his vehicle.

Therefore, we affirm the circuit court's grant of summary judgment in favor of Burger King as to this issue.

### III. Internal Policies and Procedures

 Easterling further contends the circuit court erred in granting summary judgment because Burger King breached the duty owed to him by deviating from its own internal policies and procedures. A review of the record reveals Easterling never raised this issue to the circuit court below.

Specifically, Easterling failed to raise the issue in his memorandum in opposition of summary judgment, in his Rule 59(e) motion, or at the summary judgment hearing. Accordingly, because Easterling raises this argument for the first time on appeal, we find the issue is not preserved for appellate review and decline to address it. *See Staubes v. City of Folly Beach*, 339 S.C. 406, 412, 529 S.E.2d 543, 546 (2000) ("It is well-settled that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the [circuit] court to be preserved for appellate review."); *id.* (noting that, without an initial ruling from the circuit court, an appellate court is unable to evaluate whether the circuit court committed error).

## IV. Failure to Rule Upon the Arguments Presented

Finally, Easterling contends the circuit court erred in failing to properly rule upon his arguments and vacate the grant of summary judgment in light of his Rule 59(e) motion. We disagree.

As a preliminary matter, we note that Easterling's reliance upon this court's decision in *Bowen v. Lee Process Systems, Co.*, 342 S.C. 232, 536 S.E.2d 86 (Ct.App.2000), is misplaced because—as he concedes in his brief—our supreme court overruled *Bowen* in *Woodson*. Easterling nevertheless argues this court "is unable to ascertain the basis behind the circuit court's order" because the circuit court ruled upon the motion for summary judgment via Form 4 order. We disagree, however, and find the parties provided an ample record for this court to conduct meaningful appellate review of the circuit court's grant of summary judgment and rule upon the merits of this case. *See Woodson*, 406 S.C. at 527, 753 S.E.2d at 433 (noting appellate courts apply the same standard as the circuit court under Rule 56(c), SCRCP, and finding the court of appeals had "a sufficient record before it to permit meaningful appellate review and make a decision on the merits"); *Porter v. Labor Depot*, 372 S.C. 560, 568, 643 S.E.2d 96, 100 (Ct.App. 2007) (stating "not all situations require a detailed order, and the [circuit] court's form order may be sufficient if the appellate court can ascertain the basis for the circuit court's ruling from the record on appeal"). The circuit court acted within its

discretion in issuing a Form 4 order, and we find Easterling's arguments to the contrary unavailing.[5]

## CONCLUSION

Based on the foregoing analysis, the circuit court's grant of summary judgment in favor of Burger King is

**AFFIRMED.**

HUFF, A.C.J., and THOMAS, J., concur.

---

**5.** *Easterling also asserts the circuit court erred in denying his Rule 59(e) motion for the same reasons it erred in granting summary judgment.* Easterling, however, cites no authority in his brief to support this contention and then turns to the argument that the Rule 59(e) motion preserved his arguments on appeal. To the extent Easterling argues the circuit court abused its discretion in denying his Rule 59(e) motion, we likewise reject this argument because it is without merit.